[No. A022259. First Dist., Div. Two. May 31, 1984.]

RALPH M. JAFFE, Plaintiff and Respondent, v.
UNEMPLOYMENT INSURANCE APPEALS BOARD,
Defendant and Appellant.

COUNSEL

John K. Van de Kamp, Attorney General, and Stephanie Wald, Deputy Attorney General, for Defendant and Appellant.

Morris D. Bobrow for Plaintiff and Respondent.

OPINION

FLAHERTY, J.*—The California Unemployment Insurance Appeals Board (the Board) appeals from a judgment issuing a peremptory writ of

---

*Assigned by the Chairperson of the Judicial Council.

mandate requiring that five-sevenths of a particular week's unemployment benefits be paid to respondent, Ralph M. Jaffe, who had been unavailable for work on two days of the week in question due to his observance of religious holidays in accordance with the dictates of his faith. We conclude that the trial court correctly determined that the state's denial of the entire week's benefits to Jaffe violated his right of free exercise of religion as guaranteed by the First Amendment to the United States Constitution and article I, section 4 of the California Constitution.

The facts in this case are not in dispute. Jaffe was a teacher in the San Francisco public schools from 1971 until laid off in June of 1980.[1] On June 22, 1980, he applied for unemployment insurance benefits. After the required waiting period he began to collect benefits until the week ending September 13, 1980. At the time he filed a continued claim statement he noted that he could not have worked on two Jewish high holy days falling within that week.[2] School was in session those two days. Jaffe is and was at the time of the week in question an observant Jew. Pursuant to the dictates of his religion, he was forbidden to work on those two religious holidays. During the years that he had been employed by the school district, Jaffe took leave to observe Rosh Hashanah.

The Employment Development Department found Jaffe ineligible to receive benefits for the week of September 7, 1980, due to his unavailability for work on the two Jewish high holy days. That determination was based on section 1253, subdivision (c), of the Unemployment Insurance Code.[3] The determination was appealed by Jaffe and a hearing held before an administrative law judge where the respondent was present and represented by counsel. After the hearing the judge issued a decision upholding the determination of the department. That decision was affirmed by the Board.

Jaffe filed a petition for a writ of mandate in the court below, and the court granted the writ and ordered that Jaffe be paid benefits for the week at issue "minus two-sevenths of the amount of said benefits representing the two days when petitioner was unavailable for work." It is from that decision that this appeal follows.

■■■ At issue in this case is the application of section 1253, subdivision (c), which provides that an individual is eligible for benefits only with re-

---

[1]Respondent had previously been laid off in 1979 but reinstated the same year. The 1979 layoff is not relevant to this appeal.

[2]Rosh Hashanah, the Jewish New Year, was the holiday observed on Thursday and Friday, September 11th and 12th.

[3]All further statutory references are to the Unemployment Insurance Code.

spect to any week "[h]e was able to work and available for work for that week."

The California Supreme Court interpreted section 1253, subdivision (c), in *Sanchez* v. *Unemployment Ins. Appeals Bd.* (1977) 20 Cal.3d 55 [141 Cal.Rptr. 146, 569 P.2d 740]. In *Sanchez,* the claimant applied for unemployment benefits when her employment as a waitress was terminated. Because she had to care for her young child, Ms. Sanchez would not accept work on Saturdays and Sundays. She was available during the week for restaurant or factory work with no time restrictions. Noting that her exclusion from weekend work eliminated a "major portion of her labor market" the board denied her benefits on the ground that she was not "able to work and available for work" under section 1253, subdivision (c). The Supreme Court reversed the board's decision, setting forth a two-pronged test to determine "availability" under section 1253, subdivision (c). The court held that a claimant can remain "available" for work if he or she refuses work (1) which is unsuitable or (2) which he or she would have "good cause" to refuse. (*Id.,* at p. 62.) The court concluded that parental responsibility is well founded in the law and "it would be anomalous if the Legislature intended that the obligation of the prospective claimant of unemployment benefits to accept work be irreconcilable with the duties of parenthood." (*Id.,* at p. 69.) The court interpreted "good cause," ruling that it should "not be defined so narrowly as to compel unemployed parents who remain available to a significant labor market to fulfill their parental responsibilities only upon pain of losing their unemployment benefits." (*Id.,* at p. 70.) The *Sanchez* court drew upon section 1257, subdivision (b), for the "good cause" concept, which in that section pertains to indefinite disqualification from benefits for refusing employment. The *Sanchez* court held that the availability test under sections 1253 and 1257 should be the same.

The Board contends that "the benefit week" is the cornerstone of the state's unemployment insurance benefit system. Under that system eligibility is determined on a *weekly* basis and all benefit computations are, likewise, made on a *weekly* basis.[4] (§ 1253.) For benefit purposes a "week" is defined as "the seven consecutive days commencing at 12:01 a.m. Sunday and ending at 12:00 midnight the following Saturday." (§ 143; Cal. Admin. Code, tit. 22, § 1253-1.) To be eligible for those weekly benefits, the Board contends, a claimant must be available for the entire benefit week. That is the thrust of the Board's argument on appeal.

---

[4]An exception is provided for persons unable to work due to physical or mental illness or injury for one or more days during a week. (§ 1253.5.) In such circumstances, benefits at the rate of one-seventh the weekly benefit amount are payable for each day the claimant was available for work and able to work. (*Id.*)

The Board further contends that a *temporary* suspension of benefits because of a claimant's religious observance is constitutional whereas a total and permanent disqualification for such benefits, where a market remains for the claimant's services, is concededly unconstitutional. (See *Sherbert* v. *Verner* (1963) 374 U.S. 398 [10 L.Ed.2d 965, 83 S.Ct. 1790].)

In *Sherbert* v. *Verner, supra,* 374 U.S. 398, a Seventh-Day Adventist had been deemed ineligible under a South Carolina statute for unemployment benefits because of her unavailability for Saturday work. Holding that such disqualification constituted a substantial infringment on her right to the free exercise of her religion, the Supreme Court noted the pressure on her to forego her religious practice. (*Id.,* at p. 404 [10 L.Ed.2d at p. 970].) In finding no state interest sufficient to justify that infringement, the court applied the "compelling state interest" test: "It is basic that no showing merely of a rational relationship to some colorable state interest would suffice; in this highly sensitive constitutional area, '[o]nly the gravest abuses, endangering paramount interests, give occasion for permissible limitation' [citation]." (*Id.,* at p. 406 [10 L.Ed.2d at p. 972].)

In *Thomas* v. *Review Bd., Ind. Empl. Sec. Div.* (1981) 450 U.S. 707 [67 L.Ed.2d 624, 101 S.Ct. 1425], the claimant, a Jehovah's Witness, worked in a foundry where he was assigned to a department which produced armaments. He refused the assignment as one which was contrary to his religious beliefs and quit his employment. His request for unemployment benefits was denied. The Supreme Court held that he quit for "good cause" and could not be deemed ineligible for unemployment benefits. While noting that the interests advanced by the state to justify the denial of benefits, i.e., the burden on the unemployment fund, and the detailed probing that might be required into an applicant's religious beliefs, were "by no means unimportant considerations," the court concluded that these interests did not justify the burden placed upon the petitioner's free exercise of his religion. (*Id.,* at p. 719 [67 L.Ed.2d at p. 634].)

In both *Sherbert* and *Thomas,* it was a factor that there remained a labor market for the claimant's services in which he or she could reasonably expect to obtain employment. (*Sherbert* v. *Verner, supra,* 374 U.S. 398, 399, fn. 2, 410 [10 L.Ed.2d 965, 968, 974]; *Thomas* v. *Review Bd., Ind. Empl. Sec. Div., supra,* 450 U.S. 707, 711 [67 L.Ed.2d 624, 629].) The same is true here. The trial court expressly found that such a market for Jaffe's services remained. ■ This is necessarily so because a school district should afford "reasonable accommodation" to a teacher's religious practices, such as permitting leave without pay. (See *California Teachers' Assn.* v. *Board of Trustees* (1977) 70 Cal.App.3d 431, 442 [138 Cal.Rptr. 817].) ■ Thus, Jaffe could have accepted employment and taken un-

paid leave to observe the religious holidays, as he had done when previously employed.

The Board attempts to distinguish *Sherbert* and *Thomas* from this case upon the basis that those cases deal with regular or continuing absences from work and with a total and permanent disqualification from the receipt of unemployment benefits, whereas, here, Jaffe's religious beliefs have resulted in no more than a temporary interruption in his receipt of benefits. The Board emphasizes that Jaffe's benefits were withheld for the week in question, and only for that week, and that he received benefits for the maximum of 26 weeks allowed by law. It contends that the benefits he lost for the week of his religious observance were given back to him at the end of his 26th week of unemployment because he did receive the maximum 26 weeks of benefits. On that basis the Board contends that Jaffe lost nothing because of his religious observance.

We are persuaded that there is no valid constitutional distinction between a permanent disqualification from and a temporary interruption of unemployment benefits. As Jaffe points out, a claimant is required to surrender his constitutional right of free exercise of religion in order to receive state benefits to which he would otherwise be entitled in either situation. Moreover, the state interest competing with the free exercise of religion is the same whether there is a permanent disqualification from benefits or a temporary interruption of benefits. In both cases the same review of religion-based excuses is necessary and the same inquiry into a claimant's excuse for unavailability occurs.

Finally, the Board stresses that the "accommodation" of respondent's religious beliefs is unnecessary because the financial effect on the claimant is de minimis. That argument appears to be based upon the assumption that a claimant of unemployment insurance benefits does not really need the benefits on a weekly basis but can wait until the end of the period of unemployment (presuming that, as here, no employment is obtained during the 26-week period) before recouping the "interrupted" benefits. That argument flies in the face of the purpose of the unemployment insurance benefit law and in the face of reality as well.

In this case the trial court was confronted with the competing concerns of the free exercise of religion by the claimant on one hand, and the dictates of section 1253, subdivision (c), and the state interest in establishing that a claimant is available for work and is not paid for religious holidays, on the other. We hold that the trial court took the appropriate course by ordering that respondent receive benefits for the week in question "minus two-sevenths of the amount of said benefits, representing the two days when peti-

tioner was unavailable for work." ██ ██ ██ ██ An interpretation of section 1253, subdivision (c), which permits apportionment of benefits on a daily, rather than weekly, basis is constitutionally compelled in the circumstances of this case.[5]

The judgment is affirmed.

Kline, P. J., and Smith, J., concurred.

---

[5]Statutes are, whenever possible, construed to avoid constitutional infirmity. (*Department of Corrections* v. *Workers' Comp. Appeals Bd.* (1979) 23 Cal.3d 197, 207 [152 Cal.Rptr. 345, 589 P.2d 853].) The interpretation which we give to section 1253, subdivision (c), does precisely that.