Filed 7/26/18

# IN THE SUPREME COURT OF CALIFORNIA

DOUGLAS TROESTER, )
)
    Plaintiff and Appellant, )
)          S234969
    v. )
)        9th Cir. No. 14-55530
STARBUCKS CORPORATION, )
)
    Defendant and Respondent. )
_____)

      Upon a request by the United States Court of Appeals for the Ninth Circuit (Cal. Rules of Court, rule 8.548), we agreed to answer the following question: Does the federal Fair Labor Standards Act's de minimis doctrine, as stated in *Anderson v. Mt. Clemens Pottery Co.* (1946) 328 U.S. 680, 692, and *Lindow v. United States* (9th Cir. 1984) 738 F.2d 1057, 1063, apply to claims for unpaid wages under California Labor Code sections 510, 1194, and 1197?

      The de minimis doctrine is an application of the maxim *de minimis non curat lex*, which means "[t]he law does not concern itself with trifles." (Black's Law Dict. (10th ed. 2014) p. 524.) Federal courts have applied the doctrine in some circumstances to excuse the payment of wages for small amounts of otherwise compensable time upon a showing that the bits of time are administratively difficult to record.

      We approach the question presented in two parts: First, have California's wage and hour statutes or regulations adopted the de minimis doctrine found in the

SEE CONCURRING OPINIONS

federal Fair Labor Standards Act (FLSA)?  We conclude they have not.  There is no indication in the text or history of the relevant statutes and Industrial Welfare Commission (IWC) wage orders of such adoption.

Second, does the de minimis principle, which has operated in California in various contexts, apply to wage and hour claims?  In other words, although California has not adopted the federal de minimis doctrine, does some version of the doctrine nonetheless apply to wage and hour claims as a matter of state law?  We hold that the relevant wage order and statutes do not permit application of the de minimis rule on the facts given to us by the Ninth Circuit, where the employer required the employee to work "off the clock" several minutes per shift.  We do not decide whether there are circumstances where compensable time is so minute or irregular that it is unreasonable to expect the time to be recorded.

## I.

The factual background, as recounted in the Ninth Circuit's request for certification unless otherwise indicated, is as follows:  On August 6, 2012, plaintiff Douglas Troester filed the original complaint in an action in Los Angeles County Superior Court on behalf of himself and a putative class of all nonmanagerial California employees of defendant Starbucks Corporation (Starbucks) who performed store closing tasks from mid-2009 to October 2010.  Troester worked for Starbucks as a shift supervisor.  Starbucks removed the action to federal district court and moved for summary judgment on the ground that Troester's uncompensated time was so minimal that Starbucks was not required to compensate him.

Troester submitted evidence that during the alleged class period, Starbucks's computer software required him to clock out on every closing shift before initiating the software's "close store procedure" on a separate computer terminal in the back office.  The close store procedure transmitted daily sales,

2

profit and loss, and store inventory data to Starbucks's corporate headquarters. After Troester completed this task, he activated the alarm, exited the store, and locked the front door. Troester also submitted evidence that he walked his coworkers to their cars in compliance with Starbucks's policy. In addition, Troester submitted evidence that he occasionally reopened the store to allow employees to retrieve items they left behind, waited with employees for their rides to arrive, or brought in store patio furniture mistakenly left outside.

On March 7, 2014, the district court granted Starbucks's motion for summary judgment. The district court's decision assumed that each activity identified above was compensable for purposes of its analysis. The undisputed evidence was that these closing tasks required Troester to work four to 10 additional minutes each day. As the district court stated: "The undisputed facts show that, on average, Plaintiff activated the alarm approximately one minute after he clocked out. Moreover, he did so within two minutes on 90 percent of the shifts and within five minutes on every shift. Once he set the alarm, Plaintiff needed to exit the store within one minute to avoid triggering the alarm. And Plaintiff testified that it took 30 seconds to walk out of the store. He then locked the door, which took 15 seconds to 'a couple minutes,' and walked his coworkers to their cars, which took 35 to 45 seconds. On rare occasions—once every couple of months—Plaintiff spent a few minutes letting coworkers back inside the store or bringing in patio furniture that he forgot to retrieve before clocking out."

Over the 17-month period of his employment, Troester's unpaid time totaled approximately 12 hours and 50 minutes. At the then-applicable minimum wage of $8 per hour, this unpaid time added up to $102.67, exclusive of any penalties or other remedies. The district court further assumed that the additional time would be administratively difficult to capture. Finally, while acknowledging that Troester's store closing activities were regularly occurring, the district court

3

found that regularity not significant to its conclusion that the uncompensated time was de minimis. The district court concluded that the de minimis doctrine applied and granted summary judgment against Troester on his claim for unpaid wages as well as his derivative claims for failure to provide accurate written wage statements, failure to pay all final wages in a timely manner, and unfair competition.

On appeal, the Ninth Circuit recognized that although the de minimis doctrine has long been a part of the FLSA, this court has never addressed whether the doctrine applies to wage claims brought under California law. The court further recognized that in some instances California law has been interpreted to be more protective of employee wage claims than federal law. Against this background, the Ninth Circuit certified the question presented to this court.

**II.**

In *Anderson v. Mt. Clemens Pottery Co.* (1946) 328 U.S. 680 (*Anderson*), the high court considered whether certain types of employee activity constituted compensable work time. The worksite was a pottery plant covering eight acres, and the principal question was whether the employees should be compensated for the time spent walking to and from their workstations and engaging in certain preliminary and postliminary activities. The court held that generally such time is compensable: "Since the statutory workweek includes all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace, the time spent in these activities must be accorded appropriate compensation." (*Id.* at pp. 690–691.) The court further held that once an employee proves damages from an employer's failure to pay for compensable work, the fact that the precise amount of the damages is difficult to prove because of the employer's inadequate recordkeeping cannot be counted against the employee: "[T]he employee has proved that he has performed work and has not

4

been paid in accordance with the statute.  The damage is therefore certain.  The uncertainty lies only in the amount of damages arising from the statutory violation by the employer.  In such a case 'it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts.' " (*Id.* at p. 688.)

But *Anderson* qualified these holdings with a caveat:  "We do not, of course, preclude the application of a *de minimis* rule where the minimum walking time is such as to be negligible.  The workweek contemplated by § 7(a) [of the FLSA] must be computed in light of the realities of the industrial world.  When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded.  Split-second absurdities are not justified by the actualities of working conditions or by the policy of the Fair Labor Standards Act.  It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved.  The *de minimis* rule can doubtless be applied to much of the walking time involved in this case, but the precise scope of that application can be determined only after the trier of facts makes more definite findings as to the amount of walking time in issue." (*Anderson*, *supra*, 328 U.S. at p. 692.)  The court remanded for application of the de minimis doctrine to determine whether the employee time spent on preliminary activities was "insubstantial and insignificant" and "need not be included in the statutory workweek." (*Id.* at p. 693.)

In 1961, the de minimis doctrine was codified as a federal regulation with a proviso that the doctrine was to be applied sparingly and not arbitrarily:  "In recording working time under the FLSA, insubstantial or insignificant periods of time beyond the scheduled working hours, which cannot as a practical administrative matter be precisely recorded for payroll purposes, may be

5

disregarded.  The courts have held that such trifles are de minimis.  (*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946).)  This rule applies only where there are uncertain and indefinite periods of time involved of a few seconds or minutes duration, and where the failure to count such time is due to considerations justified by industrial realities.  An employer may not arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time or practically ascertainable period of time he is regularly required to spend on duties assigned to him.  See *Glenn L. Martin Nebraska Co. v. Culkin*, 197 F. 2d 981, 987 (C.A. 8, 1952), cert. denied, 344 U.S. 866 (1952), rehearing denied, 344 U.S. 888 (1952), holding that working time amounting to $1 of additional compensation a week is 'not a trivial matter to a workingman,' and was not de minimis; *Addison v. Huron Stevedoring Corp.*, 204 F. 2d 88, 95 (C.A. 2, 1953), cert. denied 346 U.S. 877, holding that 'To disregard workweeks for which less than a dollar is due will produce capricious and unfair results.'  *Hawkins v. E. I. du Pont de Nemours & Co.*, 12 W.H. Cases 448, 27 Labor Cases, para. 69,094 (E.D. Va. 1955), holding that 10 minutes a day is not de minimis."  (29 C.F.R. § 785.47 (2018).)

Subsequently, the Ninth Circuit in *Lindow v. U.S.* (9th Cir. 1984) 738 F.2d 1057 (*Lindow*) explained that "in determining whether otherwise compensable time is *de minimis* [under the FLSA], we will consider (1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work."  (*Id.* at p. 1063.)  This test has been widely used by federal courts.  (See, e.g, *Kellar v. Summit Seating Inc.* (7th Cir. 2011) 664 F.3d 169, 176; *Carlsen v. United States.* (Fed.Cir. 2008) 521 F.3d 1371, 1380–1381; *De Asencio v. Tyson Foods, Inc.* (3d Cir. 2007) 500 F.3d 361, 374–375; *Brock v. City of Cincinnati* (6th Cir. 2001) 236

F.3d 793, 804–805; *Kosakow v. New Rochelle Radiology Assocs., P.C.* (2d Cir. 2001) 274 F.3d 706, 719; *Metzler v. IBP, Inc.* (10th Cir. 1997) 127 F.3d 959, 965.)

*Lindow* noted that "[m]ost courts have found daily periods of approximately 10 minutes *de minimis* even though otherwise compensable." (*Lindow*, *supra*, 738 F.2d at p. 1062 [collecting cases].)  But *Lindow* recognized that "[n]o rigid rule can be applied with mathematical certainty."  (*Ibid.*)  *Lindow* also observed that courts should consider "the size of the aggregate claim.  Courts have granted relief for claims that might have been minimal on a daily basis but, when aggregated, amounted to a substantial claim.  [Citations.]  We would promote capricious and unfair results, for example, by compensating one worker $50 for one week's work while denying the same relief to another worker who has earned $1 a week for 50 weeks."  (*Id.* at p. 1063.)

In order to determine whether the federal de minimis doctrine applies in California wage litigation, we first examine the governing statutes and regulations. In California, "wage and hour claims are today governed by two complementary and occasionally overlapping sources of authority:  the provisions of the Labor Code, enacted by the Legislature, and a series of 18 wage orders, adopted by the IWC."  (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1026 (*Brinker*).)  "The IWC's wage orders are to be accorded the same dignity as statutes.  They are 'presumptively valid' legislative regulations of the employment relationship [citation], regulations that must be given 'independent effect' separate and apart from any statutory enactments."  (*Id.* at p. 1027.)  Wage orders take precedence over the common law to the extent they conflict.  (See *Martinez v. Combs* (2010) 49 Cal.4th 35, 64–65.)

"When construing the Labor Code and wage orders, we adopt the construction that best gives effect to the purpose of the Legislature and the IWC. [Citations.]  Time and again, we have characterized that purpose as the protection

7

of employees — particularly given the extent of legislative concern about working conditions, wages, and hours when the Legislature enacted key portions of the Labor Code. [Citations.] In furtherance of that purpose, we liberally construe the Labor Code and wage orders to favor the protection of employees. [Citations.]" (*Augustus v. ABM Security Services, Inc.* (2016) 2 Cal.5th 257, 262 (*ABM Security*).)

"Federal regulations provide a level of employee protection that a state may not derogate. Nevertheless, California is free to offer greater protection. We have stated that, '[a]bsent convincing evidence of the IWC's intent to adopt the federal standard for determining whether time . . . is compensable under state law, we decline to import any federal standard, which expressly eliminates substantial protections to employees, by implication.' [Citation.] More recently, we have 'cautioned against "confounding federal and state labor law" [citation] and explained "that where the language or intent of state and federal labor laws substantially differ, reliance on federal regulations or interpretations to construe state regulations is misplaced." ' " (*Mendiola v. CPS Security Solutions, Inc.* (2015) 60 Cal.4th 833, 843 (*Mendiola*).) On a number of occasions, we have recognized the divergence between IWC wage orders and federal law, generally finding state law more protective than federal law. (See *ibid.* [departing from federal law in requiring compensation for sleep and other personal activities for on-call employees residing on employer's premises for extended period]; *Martinez v. Combs*, *supra*, 49 Cal.4th at pp. 67–68 [noting the divergence between state and federal definitions of "employ"]; *Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575, 588–592 (*Morillion*) [state law has not adopted a rule comparable to federal Portal-to-Portal Act excluding certain transportation time under employer's control]; *Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 795–799

[recognizing that the IWC's definition of "outside salesperson" exempt from overtime rules differs from federal definition].)

In order to determine whether California has adopted the federal de minimis rules, we first observe that IWC wage order No. 5-2001 (Wage Order No. 5) concerning the "public housekeeping industry" includes establishments such as Starbucks that provide food and beverages. (See Wage Order No. 5, subd. 2(P).) Subdivision 2(K) defines hours worked as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so . . . ." As case law has clarified, the time during which " 'the employee is suffered or permitted to work' " encompasses the time during which the employer knew or should have known that the employee was working on its behalf. (*Morillion*, *supra*, 22 Cal.4th at p. 585.) Subdivision 4(A) of Wage Order No. 5 sets the minimum wage and specifies that wages must at least be paid to an employee "for all hours worked." Under subdivision (3)(A), employees covered by the wage order are entitled to receive one and one-half times their regular rate of pay "for all hours worked" in excess of eight hours in a workday or 40 hours in any workweek.

The Labor Code also contemplates that employees will be paid for all work performed. (All statutory references are to the Labor Code unless otherwise indicated.) Section 510, subdivision (a) provides: "Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be

9

compensated at the rate of no less than twice the regular rate of pay of an employee." The section recognizes certain exceptions in various statutorily authorized alternative workweeks, but no others.

The federal rule permitting employers under some circumstances to require employees to work as much as 10 minutes a day without compensation is less protective than a rule that an employee must be paid for "all hours worked" (Wage Order No. 5, subds. 3(A), 4(A)) or "[a]ny work" beyond eight hours a day (Lab. Code, § 510, subd. (a)). And there is no " 'convincing evidence of the IWC's intent to adopt the federal standard.' " (*Mendiola*, *supra*, 60 Cal.4th at p. 843.) Nothing in the language of the wage orders or Labor Code shows an intent to incorporate the federal de minimis rule articulated in *Anderson*, *Lindow*, or the federal regulation. Although *Anderson* has been the law for 70 years and has been incorporated into the Code of Federal Regulations for over 50 years, neither the Labor Code statutes nor any wage order has been amended to recognize a de minimis exception. Starbucks cites no statutory or regulatory history, and we have found none, that indicates an intent by the IWC or the Legislature to impliedly adopt such a rule.

Only one published Court of Appeal decision has applied the de minimis rule in an employee compensation case, specifically using the *Lindow* factors. (*Gomez v. Lincare, Inc.* (2009) 173 Cal.App.4th 508, 527–528.) But it did so without considering whether the rule should apply to California wage claims, and the court determined in any event that the rule did not apply in the case before it, which involved several hours per week of uncompensated time. (*Ibid.*)

We recognize that the de minimis doctrine appears in the Enforcement Policies and Interpretations Manual published by the Division of Labor Standards Enforcement (DLSE Manual). Sections 47.2.1 and 47.2.1.1 of the manual adopt virtually verbatim the federal regulation on this issue. (DLSE Manual (2002

10

update) p. 47–1; see 29 C.F.R. § 785.47 (2018).)  But unlike wage orders, the DLSE Manual is not binding on this court.  (*Mendiola*, *supra*, 60 Cal.4th at p. 848.)  Although statements in the policy manual may be considered for their persuasive value, the DLSE Manual contains rules that have not been subject to the Administrative Procedures Act and do not represent an exercise of quasi-legislative authority by an administrative agency.  (See *Alvarado v. Dart Container Corp. of California* (2018) 4 Cal.5th 542, 555–561; DLSE Manual at pp. 1-1 to 1-2.)

The DLSE has also issued opinion letters adopting the *Lindow* test for the de minimis rule.  (See Dept. of Industrial Relations, DLSE Opn. Letter No. 1988.05.16 (1988).)  Such advisory opinions are also not binding, although they may be a source of informed judgment to which courts and litigants may resort for guidance.  (See *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 14.)  Here, the DLSE's adoption of the federal de minimus rule appears to be based on the general proposition that federal case law construing the FLSA "may sometimes provide guidance to state courts in interpreting the IWC Orders."  (DLSE Opn. Letter No. 1988.05.16. at p. 1.)  But we will not presume the IWC intended to incorporate a less protective federal rule without evidence of such intent, and we see no sign of such intent here.

### III.

Our conclusion that California statutes and wage orders have not adopted the federal de minimis doctrine does not fully resolve the issue before us. According to Starbucks, the de minimis rule is also a principle of California law that is independently applicable to wage and hour cases as a matter of state law. Starbucks cites *Wisconsin Dept. of Revenue v. William Wrigley, Jr., Co.* (1992) 505 U.S. 214, which examined a federal statute granting immunity from state taxation to companies when their only business contact with the state is the

11

solicitation of orders.  At issue was whether de minimis business contacts other than solicitation of orders would forfeit this immunity under the statute.  The high court concluded that the de minimis principle applied, rejecting Wisconsin's argument that "the plain language of the statute bars this recognition of a *de minimis* exception, because the immunity is limited to situations where 'the *only* business activities within [the] State' are those described, 15 U.S.C. § 381 (emphasis added).  This ignores the fact that the venerable maxim *de minimis non curat lex* ('the law cares not for trifles') is part of the established background of legal principles against which all enactments are adopted, and which all enactments (absent contrary indication) are deemed to accept."  (*Id.* at p. 231.)  Starbucks argues that even if the relevant Labor Code statutes and wage order have not explicitly adopted the federal de minimis rule, the de minimis principle is part of the "established background of legal principles" against which the statutes and wage order have been enacted.

Troester contends that the fact that the IWC has not adopted an explicit de minimis regulation after it had been incorporated into federal law is a sign that the IWC intended to preclude its application in wage cases.  Troester further contends that unlike the California Labor Code, the text of the FLSA does not contain a blanket requirement to pay employees for all hours worked, except in a regulation that postdated and implicitly incorporated *Anderson*'s de minimis rule.  (29 C.F.R. § 778.223 (2018).)

We have recognized that the maxim *de minimis non curat lex* is "of ancient origin" and may be incorporated by implication into the state's statutory and constitutional enactments.  (*Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468, 514 [recognizing the incorporation of that principle into the free speech clause of the California Constitution].)  This principle is among the maxims of jurisprudence codified in the California Civil Code.  (Civ. Code, § 3533 ["The law

disregards trifles."].)  The rule originated as one of the maxims of equity formulated by English Courts of Chancery.  (See Nemerofsky, *What Is a "Trifle" Anyway?* (2001–2002) 37 Gonz. L.Rev. 315, 322–323.)  "The function of the 'de minimis' doctrine . . . is to place 'outside the scope of legal relief the sorts of intangible injuries, normally small and invariably difficult to measure, that must be accepted as the price of living in society.'  The maxim signifies 'that mere trifles and technicalities must yield to practical common sense and substantial justice' so as 'to prevent expensive and mischievous litigation, which can result in no real benefit to complainant, but which may occasion delay and injury to other suitors.' "  (*Id.* at pp. 323–324, fns. omitted.)  Starbucks argues that in light of the "ancient roots" of the de minimis rule, we should recognize it as part of our wage and hour law, just as *Anderson* recognized the rule as applicable to the FLSA despite no explicit statutory basis.

We decline to decide whether a de minimis principle may ever apply to wage and hour claims given the wide range of scenarios in which this issue arises. In FLSA litigation, the brief employee activity in question has sometimes been incidental to noncompensable time, such as commute time.  (See *Chambers v. Sears Roebuck & Co.* (S.D.Tex. 2011) 793 F.Supp.2d 938, 960; *Andrews v. Dubois* (D.Mass. 1995) 888 F.Supp. 213, 219; *Singh v. City of New York* (2d Cir. 2008) 524 F.3d 361.)  In other cases, the activity in question was irregular or rarely occurring.  (*Musticchi v. City of Little Rock* (E.D.Ark. 2010) 734 F.Supp.2d 621, 633.)  In still others, the activity in question was paperwork involving a minute or less of an employee's time.  (*Rutti v. Lojack Corp.* (9th Cir. 2010) 596 F.3d 1046, 1057–1058.)  Beyond the cases, briefs on behalf of Starbucks invoke various hypothetical scenarios of de minimis activity, such as an employee reading an e-mail notification of a shift change during off-work hours.

13

Instead of prejudging these factual permutations, we decide only whether the de minimis rule is applicable to the facts of this case as described by the Ninth Circuit. As noted, Troester had various duties related to closing the store after he clocked out, and the parties agree for purposes of resolving the issue before us that the time spent on these duties is compensable. According to the Ninth Circuit, "[t]he undisputed evidence was that, on a daily basis, these closing tasks generally took [Troester] about 4-10 minutes . . . . [The district court] further assumed that the additional time would be administratively difficult to capture." (This time is in addition to the time Troester alleges he spent "once every couple months" letting coworkers back inside the store or bringing in patio furniture that he forgot to retrieve before clocking out, time that Starbucks contends was not compensable.)

The de minimis rule, as a background principle, has been invoked in a variety of statutory contexts, and courts have decided such cases by examining whether application of the rule would be consistent with the statutory purpose. (See *Goehring v. Chapman University* (2004) 121 Cal.App.4th 353, 384 ["Substantial compliance with a statute 'will suffice if the purpose of the statute is satisfied . . . but substantial compliance means *actual* compliance in respect to that statutory purpose.' "].) In the employment context, we have held that there is no de minimis exception to the assessment of penalties for unreasonable delay in the payment of workers compensation payments: "The language of section 5814 . . . does not recognize any such exception and requires assessment of the penalty for *any* 'unreasonable' delay . . . ." (*Gallamore v. Workers' Comp. Appeals Bd.* (1979) 23 Cal.3d 815, 822.) In *Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1191, the court declined to read into a municipal living wage ordinance an exception for workers who performed only a small amount of work on city contracts. In interpreting the unemployment insurance statutes, courts have construed them to contain a de minimis exception when that construction was

14

consistent with the statutes' purpose of cushioning the impact of involuntary unemployment (see *Cooperman v. Unemployment Ins. Appeals Bd.* (1975) 49 Cal.App.3d 1, 10 [finding that despite de minimis services rendered by applicant, he was "unemployed" per section 1252 of the Unemployment Insurance Code]) while declining to find such an exception when it would run counter to that protective purpose (see *Jaffe v. Unemployment Ins. Appeals Bd.* (1984) 156 Cal.App.3d 719, 725 [refusing to invoke a de minimis rule where unemployment benefits would have been temporarily interrupted]).

We have said that application of a de minimis rule is inappropriate when "the law under which this action is prosecuted does care for small things." (*Francais v. Somps* (1891) 92 Cal. 503, 506.) In deciding whether application of the de minimis rule in this case would be consistent with the governing wage order and Labor Code statutes, we observe that the regulatory scheme of which the relevant statutes and wage order provisions are a part is indeed concerned with "small things." For example, California law ensures that most nonexempt employees receive two daily 10-minute rest breaks. (Wage Order No. 5, subd. (12)(A); see *Brinker*, *supra*, 53 Cal.4th at p. 1031.) We have interpreted Wage Order No. 5 as requiring strict adherence to that requirement, and we have scrupulously guarded against encroachments on this 10-minute period. Thus, we recently held that the obligation to relieve employees of any work-related duties during the rest period barred employers from requiring employees to be on call during their rest breaks and that breach of this duty triggers an employer's obligation under section 226.7, subdivision (b) to pay the employee an additional hour of pay. (*ABM Security*, *supra*, 2 Cal.5th at p. 265.)

*ABM Security*, though addressing a different issue, is instructive in two respects. First, although the de minimis principle was not explicitly invoked, we implicitly rejected the argument that a de minimis intrusion into a 10-minute rest

15

period would pass muster under the statute.  Second, the strict construction of a law prohibiting any interference with or reduction of a 10-minute rest break is difficult to reconcile with a rule that would regard a few minutes of compensable time per day as a trifle not requiring compensation if too inconvenient to record.

Although the IWC has not specifically addressed the de minimis rule, we note that its regulations have been more expansive than the FLSA in defining the time for which an employee must be compensated.  Most closely on point is the IWC's response to the federal Portal-to-Portal Act (29 U.S.C. § 251 et seq.).  This legislation was a 1947 amendment to the FLSA relieving "employers from paying minimum wages or overtime compensation to employees for the following activities:  '(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and (2) activities which are preliminary to or postliminary to said principal activity or activities . . . .' " (*Morillion*, *supra*, 22 Cal.4th at p. 589.)  The amendment was "partly in response to [Congress's] concern that the FLSA 'has been interpreted judicially in disregard of long-established customs, practices, and contracts between employers and employees . . . .' " (*Id.* at p. 590, quoting 29 U.S.C. § 251.)  More specifically, the amendment was a response to *Anderson*'s holding that the time walking to a workstation was compensable.  (See Linder, *Class Struggle at the Door:  The Origins of the Portal-to-Portal Act of 1947* (1991) 39 Buff. L.Rev. 53, 106–130.)  At the same time, the IWC amended its definition of "hours worked" in its wage orders, eliminating reference to specific preliminary or postliminary activities such as "waiting time," while broadening the definition to include " 'the time during which an employee is subject to the control of an employer.' " (*Morillion*, at p. 591.)  We concluded that this amended language was evidence of an intent to depart from the federal exclusion of various forms of travel time in the Portal-to-Portal Act.  (*Id.* at pp. 591–592.)

16

Although the IWC amendment, which postdated *Anderson* by one year, did not specifically address the de minimis doctrine, we find it instructive that the amended wage order broadly defined "hours worked" to include preliminary and postliminary activities excluded by the FLSA. It is also instructive that the IWC in defining "hours worked" appeared to give little weight to the customary employment practices that informed Congress's decision to enact the Portal-to-Portal Act and instead placed more importance on the policy of ensuring that employees are fully compensated for all time spent in the employer's control.

Moreover, although FLSA case law can be persuasive authority in interpreting our own wage laws, the reasoning of *Anderson* is questionable. We do not hold that payment for time worked must account for "[s]plit-second absurdities." (*Anderson*, *supra*, 328 U.S. at p. 692.) But it is not clear that "[s]plit-second absurdities" can be readily equated with "minutes of work beyond the scheduled working hours" or that an action should be permitted only when "an employee is required to give up a substantial measure of his time and effort." (*Ibid.*) Nor is it clear why, when it is difficult to keep track of time worked, the employee alone should bear the burden of that difficulty.

Two additional considerations reinforce our reluctance to fully adopt *Anderson*'s reasoning as a matter of state law. First, the modern availability of class action lawsuits undermines to some extent the rationale behind a de minimis rule with respect to wage and hour actions. The very premise of such suits is that small individual recoveries worthy of neither the plaintiff's nor the court's time can be aggregated to vindicate an important public policy. As we explained in *Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, a class action suit involving a 4 cents per gallon surcharge on gasoline customers using credit cards: "Setting aside the fact that class members who were repeat customers might be entitled to recover far more than the minimal 80-cent damage figure noted by the trial court,

17

it is firmly established that the benefits of certification are not measured by reference to individual recoveries alone. Not only do class actions offer consumers a means of recovery for modest individual damages, but such actions often produce 'several salutary by-products, including a therapeutic effect upon those sellers who indulge in fraudulent practices, aid to legitimate business enterprises by curtailing illegitimate competition, and avoidance to the judicial process of the burden of multiple litigation involving identical claims.' " (*Id.* at p. 445.) As one Court of Appeal observed in a case involving alleged fraudulent practices against consumers, "[i]n this age of the consumer class action this maxim [*de minimis non curat lex*] usually has little value." (*Harris v. Time, Inc.* (1987) 191 Cal.App.3d 449, 458.) The same is true of employee class actions.

Second, many of the problems in recording employee work time discussed in *Anderson* 70 years ago, when time was often kept by punching a clock, may be cured or ameliorated by technological advances that enable employees to track and register their work time via smartphones, tablets, or other devices. We are reluctant to adopt a rule purportedly grounded in "the realities of the industrial world" (*Anderson*, *supra*, 328 U.S. at p. 692) when those realities have been materially altered in subsequent decades.

Both Troester and Starbucks cite *See's Candy Shops, Inc. v. Superior Court* (2012) 210 Cal.App.4th 889 (*See's Candy*) in support of their positions. The main issue in that case was the employer's practice of rounding the time employees punched in or out of work. As the court explained: "Under the nearest-tenth rounding policy, in and out punches are rounded (up or down) to the nearest tenth of an hour (every six minutes beginning with the hour mark). The Kronos time punches are thus rounded to the nearest three-minute mark. For example, if an employee clocks in at 7:58 a.m., the system rounds up the time to 8:00 a.m. If the employee clocks in at 8:02 a.m., the system rounds down the entry to 8:00 a.m."

(*Id.* at p. 892.) The court noted that although there were no reported California decisions on the issue, such rounding policy had long been used by employers and had been recognized as legitimate under federal regulation and the DLSE Manual. (*Id.* at pp. 901–903.) The court rejected the argument that California wage or overtime statutes prohibit such a practice. (*Id.* at pp. 905–907.)

Significantly, the court in *See's Candy*, consistent with federal law and DLSE directive, accepted the validity of the rounding policy only "if the rounding policy is fair and neutral on its face and 'it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.' " (*See's Candy*, *supra*, 210 Cal.App.4th at p. 907.) On this basis, the court held there was a triable issue as to whether the company's rounding policy "was proper under California law because it was used in a manner that did not result over a period of time in the failure to compensate the employees for all the time they actually worked." (*Id.* at p. 908.)

In support of its position, Starbucks cites *See's Candy*'s reliance on federal law and the DLSE Manual, and its rejection of arguments similar to Troester's contention that the policy is barred by statutes requiring payment to the employer of all wages. But critically, *See's Candy* rested its holding on its determination that the rounding policy was consistent with the core statutory and regulatory purpose that employees be paid for all time worked. Starbucks argues for a departure from that principle, and we conclude no such departure is warranted in this case.

In light of the Wage Order's remedial purpose requiring a liberal construction, its directive to compensate employees for all time worked, the evident priority it accorded that mandate notwithstanding customary employment arrangements, and its concern with small amounts of time, we conclude that the de minimis doctrine has no application under the circumstances presented here. An

19

employer that requires its employees to work minutes off the clock on a regular basis or as a regular feature of the job may not evade the obligation to compensate the employee for that time by invoking the de minimis doctrine. As the facts here demonstrate, a few extra minutes of work each day can add up. According to the Ninth Circuit, Troester is seeking payment for 12 hours and 50 minutes of compensable work over a 17-month period, which amounts to $102.67 at a wage of $8 per hour. That is enough to pay a utility bill, buy a week of groceries, or cover a month of bus fares. What Starbucks calls "de minimis" is not de minimis at all to many ordinary people who work for hourly wages.

We recognize that one of the main impetuses behind the de minimis doctrine in wage cases is "the practical administrative difficulty of recording small amounts of time for payroll purposes." (*Lindow*, *supra*, 738 F.2d at p. 1062; see 29 C.F.R. § 785.47 (2018) [insignificant periods of time "which cannot as a practical administrative matter be precisely recorded for payroll purposes, may be disregarded"].) But employers are in a better position than employees to devise alternatives that would permit the tracking of small amounts of regularly occurring work time. One such alternative, which it appears Starbucks eventually resorted to here, was to restructure the work so that employees would not have to work before or after clocking out. Moreover, as noted, technological advances may help with tracking small amounts of time. An employer may be able to customize and adapt available time tracking tools or develop new ones when no off-the-shelf product meets its needs. And even when neither a restructuring of work nor a technological fix is practical, it may be possible to reasonably estimate work time — for example, through surveys, time studies, or, as *See's Candy* suggested, a fair rounding policy — and to compensate employees for that time. Under the circumstances of this case, we decline to adopt a rule that would require the

20

employee to bear the entire burden of any difficulty in recording regularly occurring work time.

## CONCLUSION

We hold that the relevant California statutes and wage order have not incorporated the de minimis doctrine found in the FLSA. We further conclude that although California has a de minimis rule that is a background principle of state law, the rule is not applicable here. The relevant statutes and wage order do not allow employers to require employees to routinely work for minutes off-the-clock without compensation. We leave open whether there are wage claims involving employee activities that are so irregular or brief in duration that it would not be reasonable to require employers to compensate employees for the time spent on them.

**LIU, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**CORRIGAN, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**GRIMES, J.***

---

* Associate Justice of the Court of Appeal, Second Appellate District, Division Eight, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

21

**CONCURRING OPINION BY CUÉLLAR, J.**

Today's majority opinion is right to conclude that no de minimis doctrine exists under California law to insulate an employer from responsibility for paying an employee who regularly works for minutes off the clock. But in reaching this conclusion, the majority opinion also leaves unresolved whether an employee's work may ever be so fleeting or irregular that such time is no longer compensable. I write separately to emphasize that our opinion today is both principled and practical: It protects workers from being denied compensation for minutes they regularly spend on work-related tasks, but does not consign employers or their workers to measure every last morsel of employees' time. The latter point is as important as the former, because advances in technology and changes in behavioral norms are constantly shaping our understanding of what fractions of time can be reliably measured, and what counts as too trifling a moment to measure in the wage and hour context. While there is no de minimis rule that applies to this domain of California law — at least where minutes of regular off-the-clock time are at issue — there is room for a rule of reason to avoid a situation forcing employers to monitor every fraction of every second of employee time. But what we must avoid in addressing these concerns — and in construing the body of law the majority opinion interprets today — is building a rickety skyscraper on a muddy swamp by relying on an administrability rationale too precarious to offer much meaningful analytical structure to a rule of reason, given the evolving technological fabric of modern life.

Modern technology allows society not only to measure time, but — ever more — to master the knowledge of precisely how it is used, by whom, and for what purpose. In federal case law, the de minimis doctrine is grounded in the practical administrative difficulties of tracking time that amounts to "split-second absurdities." (*Anderson v. Mt. Clemens Pottery Co.* (1946) 328 U.S. 680, 692 (*Anderson*).) Change the technology available to employers and the public's acceptance of broad surveillance, and the result is a shift in the norm governing what's "practical." The majority opinion rightly observes that computer and smartphone technologies undercut any rationale for a de minimis doctrine that would find minutes of work performed on a regular basis to not be compensable. (Maj. opn., *ante*, at p. 20.) More generally, the majority indicates that "technological advances" may increasingly facilitate tracking small amounts of regularly occurring work time. (*Ibid.*)

Yet when it comes to monitoring the minutia of human behavior, the future and the present are converging. In a world with pervasively deployable (or already deployed) locative technology such as smartphones and sensors, what employers can routinely record — or will soon be able to — are precisely the "split-second absurdities" previously deemed impossible to track. (See Tippett et al., *When Timekeeping Software Undermines Compliance* (2017) 19 Yale J.L. & Tech. 1, 2–3 ["In place of the old punch-card time clock, employees now log onto a computer or mobile device, swipe a radio frequency identification (RFID) badge, scan a fingerprint, or gaze into an iris recognition device. These and similar systems enable employers easily to record employees' hours worked, breaks taken, and other information used to determine compensation." (fn. omitted)].) Even as such practices can help employers ensure their workers are compensated for regularly worked minutes that might have once been treated as "off the clock," they also highlight the need for subsequent line drawing to implement existing

law.  Without some appropriate limiting principle, one can imagine a lawsuit based on regularly occurring or even occasional additional work time that amounts to less than a second.  Depending on the industry, employers may have difficulty arguing, as a matter of administrability, that they cannot either categorically exclude from employees' responsibility any time employers cannot measure, or deploy increasingly familiar technologies to measure such narrow slices of time with some accuracy.

In the absence of a legislatively drawn bright line, making sense of the resulting questions may work best, as Justice Kruger suggests in her concurring opinion, if we apply some "rule of reason" for determining which of these claims are sufficient to bring a wage and hour suit.  (Conc. opn. of Kruger, J., *post*, at p. 2.)  The rule of reason is best not described as a de minimis rule, because embracing that label risks blurring the distinction between the quite limited extent of the reasonableness inquiry under California law and a federal de minimis doctrine with a particular content — including reliance on administrability — that does not necessarily converge with California's legal commitments.  Those commitments protect workers from being forced to engage in uncompensated work even as they also offer some recognition that certain spare seconds or fractions of them spent on arguably work-related activities may not always merit compensation.  (See Civ. Code, § 3533 ["The law disregards trifles"]; *Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468, 514 ["*De minimis non curat lex* is a maxim of ancient origin, 'old' even in the infancy of the nation"]; *Layport v. Rieder* (1939) 37 Cal.App.2d Supp. 742, 748, disapproved on other grounds in *Heald v. Friis-Hansen* (1959) 52 Cal.2d 834 [finding 8-cent difference in calculation of accrued interest to be "too trifling to be considered as grounds for requiring a trial"].)  Still, once claimed time is established as compensable, the onus is on the employer to demonstrate that "reason" requires the employee to go

3

uncompensated for the time she worked given California's strong policy favoring compensation.  (See Industrial Welfare Com., Wage Order No. 5-2001 (Jan. 1, 2001), Cal. Code Regs., tit. 8, § 11050, subd. 4(A) (hereafter Wage Order 5) ["Every employer shall pay to each employee wages . . . for all hours worked . . . ."].)  The difficulty is discerning on what basis an agency or a judge's "reason" might serve to limit the overarching policy incorporated into California law of fully compensating employees for the work they perform, with no stable technological impossibility on this front as a convenient way to settle whether to track even "split seconds."

What reasonableness in this domain almost certainly implicates is whether such chronological morsels can be meaningfully perceived at all at the time they occur.  That people sometimes struggle to perceive distinctions involving fractions of a second is inherent in human limitations.  Modern computer displays, for example, generally refresh their screen at a rate of 60 hertz (each cycle lasting approximately 0.0167 seconds) because humans generally will no longer see a "flicker" on the screen at such a rate.  (But see Davis et al., *Humans perceive flicker artifacts at 500 Hz* (2015) Scientific Reports 5, art. No. 7861, at p. 1 <https://www.nature.com/articles/srep07861.pdf> [as of July 24, 2018][1] [indicating that, previous to this study indicating that humans could perceive flicker at 500 hertz, it was thought that humans could not perceive flicker above 50 to 90 hertz, depending on the intensity and contrast of the picture].)  In terms of reaction time, at least one study reveals the average reaction time of medical students to visual stimuli was approximately 0.25 seconds.  (Jain et al., *A comparative study of visual and auditory reaction times on the basis of gender and physical activity levels of medical first year students* (2015) 5 Int'l J. Applied

---

[1]     All Internet citations in this opinion are archived by year, docket number, and case name at <http://www.courts.ca.gov/38324.htm>.

4

Basic Medical Research 124-127 <https://www.ncbi.nlm.nih.gov/pmc/articles/ PMC4456887> [as of July 24, 2018]; see also *id.* [also referencing to 0.19 seconds as the "accepted" mean reaction time to light for college age students].)  It seems unlikely the Legislature's purpose in enacting California's fair compensation laws encompassed compensation of employees for additional work performed on such a time scale.  (See *Wisconsin Dept. of Revenue v. William Wrigley, Jr., Co.* (1992) 505 U.S. 214, 231 [noting that " 'the law cares not for trifles' " is "part of the established background of legal principles against which all enactments are adopted, and which all enactments (absent contrary indication) are deemed to accept"].)  It is far from clear that a reasonable rounding strategy, even one rounding to the nearest second, would cut in favor of counting such amounts of time.  (Cf. *See's Candy Shops, Inc. v. Superior Court* (2012) 210 Cal.App.4th 889, 892 [rounding time to nearest six minutes].)  Were such a rounding rule justified, it would leave the potential problem in class actions of allocating awards to claimants based on fractional cents.  As a countervailing concern, a minute or even dozens of seconds may seem trifling to an employer even if — as the majority opinion points out — these small moments appreciably impact employees at the time.

In the realm of time people can ordinarily perceive, any sensible evaluation will likely depend largely on the context in which the work at issue occurs, along with considerations rooted in privacy law or collective bargaining agreements. (See, e.g., *Hernandez v. Hillsides, Inc.* (2009) 47 Cal.4th 272, 286-288 [discussing employees' right to privacy under the Cal. Const. and the common law]; *Carpenter v. U.S.* (2018) 585 U.S. __, __ [138 S.Ct. 2206, 2210] [recognizing a 4th Amend. reasonable expectation of privacy in "the whole of [a person's] physical movements"]; 18 U.S.C. §§ 2510 et seq., 2701 et seq. [providing protections implemented by the federal Electronic Communications Privacy Act of

5

1986 that limit the unauthorized interception and retrieval of electronic communications, with some exceptions]; Lavitt, *Monitoring Employee Whereabouts: Collective Bargaining Implications of RFID and GPS Technologies in the Workplace* (Nov. 4, 2011) 5th Annual ABA Section of Labor & Employment Law Conference, at pp. 11-13 <https://www.americanbar.org/content/dam/aba/administrative/labor_law/meetings/2011/ac2011/155.authcheckdam.pdf> [as of July 24, 2018] [discussing cases where collective bargaining agreements addressed GPS and other employee tracking systems].)  So we must be wary of any future holding that would incentivize a drastic increase in the scope and intensity of employee monitoring, which might systematically erode employees' ability to find even a moment of privacy in their lives.  (Kesan, *Cyber-Working or Cyber-Shirking?: A First Principles Examination of Electronic Privacy in the Workplace* (2002) 54 Fla. L.Rev. 289, 320 [noting fears that excessive monitoring of employees creates essentially " 'electronic sweatshop[s]' "].)  This is especially true as privacy issues have launched to the national stage and resulted in new laws in our state safeguarding privacy in our personal data, albeit in the consumer law context.  (See Consumer Privacy Act of 2018, Civ. Code, § 1798.100 et seq. (added by Stats. 2018, ch. 55, § 3, eff. Jan. 1, 2020) [granting any consumer, defined as "a natural person who is a California resident," certain rights with respect to personal data collected by businesses].)  At the very least, our compensation rulings should not require subcutaneous microchips, pervasive digital surveillance of all employees' actions and communications, or other employment monitoring systems more at home in a cyberpunk novel than a modern place of employment.  (See, e.g., Mo. Rev. Stat., § 285.035(1) ["No employer shall require an employee to have personal identification microchip technology implanted into an[] employee for any reason"].)

The majority here does not reach such a troubling result. Instead it observes that employers have the burden of tracking potential work time occurring on a "regular basis" or that is "a regular feature of the job," and in doing so, rightly focuses on reasonable solutions such as smartphone apps or rounding strategies for tracking these regular amounts of time. (Maj. opn., *ante*, at p. 20.) The unpredictable length and occasional nature of the additional work at issue may affect the viability of some timekeeping systems and rounding strategies — though here too, other monitoring or data analysis approaches may often resolve the difficulties.

In addition to discussing the potential solutions an employer might adopt, the majority's opinion emphasizes how the work performed here was "regular" in concluding that it was compensable. (Maj. opn., *ante*, at pp. 20-21.) The focus on "regularity" is, to some extent, based on technological concerns — it seems more practical to require an employer to track work time that is predictable. Yet regularity also may act as a proxy for the principle that employees should always be fully compensated for core or expected aspects of their work. The standard for what is compensable work time in California is relatively broad and includes all time for which the employer knew or should have known that the employee was working on the employer's behalf. (*Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575, 584-585 [interpreting wage order language that makes compensable all time " 'the employee is suffered or permitted to work, whether or not required to do so' "].) Concepts of fair dealing weigh against allowing an employer to knowingly require an employee to perform a task, and then claim that said task was "de minimis" after the fact. In contrast, there may be occasional activities involving far less time than was at issue here, peripheral to the employee's core job function, and undertaken for reasons other than service to the employer.

7

As easily available technologies can increasingly track our every movement and moment, California law still protects workers from being forced to undertake work that won't be paid. That protection is not diluted if it remains possible for employers to argue against liability for moments so fleeting that they are all but imperceptible. Courts may sometimes find employers' arguments to have merit in light of a context-dependent inquiry focused on the extent to which the time in question can be meaningfully perceived, the quantity and regularity of the uncompensated work over time, as well as the nature of the employee's job responsibilities and related factors. What we know is that regular minutes worked by employees off the clock do not come close to being treatable essentially as rounding errors under a sensible application of a rule of reason. And issues of employee privacy will no doubt be subject to further deliberation among employers, employees, and legislators. Yet whatever the merits of sophisticated employee monitoring schemes, California law stops well short of requiring employer analysis of every fractional second as part of an unsparing effort to discern what time is compensable.

**CUÉLLAR, J.**

**CONCURRING OPINION BY KRUGER, J.**


I concur in the majority opinion, which I have signed. I write separately to address the central question the opinion leaves open: whether, in circumstances different from those presented in this case, the de minimis principle may apply to California wage and hour claims. (See maj. opn., *ante*, at pp. 2, 13, 21.)

As the majority opinion explains (*ante*, at pp. 12–13), the maxim *de minimis non curat lex* represents a background legal principle of ancient standing. The 1872 Legislature codified the maxim in our Civil Code (Civ. Code, § 3533), and like other such maxims it serves as an interpretive tool to aid in the "just application" of facially broad statutory language. (*Id.*, § 3509; see *National Shooting Sports Foundation, Inc. v. State of California* (2018) 5 Cal.5th 428, 433.) One recognized function of the maxim is to avoid litigation over trivial harms, where the costs of litigating the correct measure of a remedy may exceed the benefits of providing the remedy in the first place. Simply put, "[t]he maxim signifies 'that mere trifles and technicalities must yield to practical common sense and substantial justice . . . .' " (Nemerofsky, *What Is a "Trifle" Anyway?* (2001–2002) 37 Gonz. L.Rev. 315, 323.) The de minimis doctrine operates, in essence, as a "rule of reason." (Veech & Moon, *De Minimis Non Curat Lex* (1947) 45 Mich. L.Rev. 537, 556, 567; see *id.* at pp. 543–544.)

Here, we consider provisions of California labor law that mandate compensation for "[a]ny" (Lab Code, § 510, subd. (a)) and "all" time worked

1

(Industrial Welfare Com., Wage Order No. 5, subd. 2(K)). The breadth of the language reflects California's vital interest in ensuring that employers fully compensate their employees for the work they perform. (See, e.g., *Kerr's Catering Service v. Department of Industrial Relations* (1962) 57 Cal.2d 319, 326 [citing California's strong public policy "in favor of full and prompt payment of wages due an employee"].) But the law, fairly construed, also leaves room for application of a background rule of reason. A sensible application of our law does not encompass claims for negligible periods of time that cannot reasonably be measured or estimated with a fair degree of accuracy.

The United States Supreme Court described this sort of a commonsense limitation on wage claims when it held that "[s]plit-second absurdities" are to be disregarded in calculating compensable working time. (*Anderson v. Mt. Clemens Pottery Co.* (1946) 328 U.S. 680, 692.) Nothing in the majority opinion calls into question whether California law observes the same basic limitation. (Maj. opn., *ante*, at p. 17.) The majority opinion instead correctly holds that insofar as the federal de minimis doctrine has been applied more broadly to include individually or cumulatively significant periods of time that can reasonably be measured or estimated, the federal doctrine does not represent the law of California. (*Id.* at pp. 8–11.) As the majority says, "[a]n employer that requires its employees to work minutes off the clock on a regular basis or as a regular feature of the job may not evade the obligation to compensate the employee for that time by invoking the de minimis doctrine." (*Id.* at pp. 19–20.)

To say that the de minimis doctrine cannot excuse failing to compensate employees under these circumstances is not to say that the de minimis doctrine has no role to play under *any* circumstance; a properly limited rule of reason does have a place in California labor law. The overarching rule is, and must be, that employees are entitled to full compensation for time worked, and employers must

2

make every reasonable effort to ensure they have adequately measured or estimated that time.  But the law also recognizes that there may be some periods of time that are so brief, irregular of occurrence, or difficult to accurately measure or estimate, that it would neither be reasonable to require the employer to account for them nor sensible to devote judicial resources to litigating over them.

The claim here involves nontrivial, regularly occurring periods of work, and thus is not subject to any such properly limited de minimis rule.  And I agree with the majority that without an appropriate factual record before us, this is not the case for detailed delineation of the rule's proper scope.  But it is not difficult to imagine a number of scenarios in which such a rule might apply, depending on the circumstances:

- An employer requires workers to turn on their computers and log in to an application in order to start their shifts.  Ordinarily this process takes employees no more than a minute (and often far less, depending on the employee's typing speed), but on rare and unpredictable occasions a software glitch delays workers' log-ins for as long as two to three minutes.

- An employer ordinarily distributes work schedules and schedule changes during working hours at the place of employment.  But occasionally employees are notified of schedule changes by e-mail or text message during their off hours and are expected to read and acknowledge the messages.

- After their shifts have ended, employees in a retail store sometimes remain in the store for several minutes waiting for transportation.  On occasion, a customer will ask a waiting employee a question, not realizing the employee is off duty.  The employee — with the

3

employer's knowledge (see maj. opn, *ante*, at p. 9) — spends a minute or two helping the customer.

In situations like these, a requirement that the employer accurately account for every second spent on work tasks may well be impractical and unreasonable; if so, a claim for wages and penalties based on the employer's failure to do so would be inconsistent with California labor law, construed with the guidance of the background rule codified in Civil Code section 3533.

California law does, in short, make some allowances based on considerations of practicality and reasonableness. It does not, however, permit an employer to require an employee to regularly work for nontrivial periods of time without providing compensation.

               **KRUGER, J.**

**I CONCUR:**
**GRIMES, J.**\*

---

\*  Associate Justice of the Court of Appeal, Second Appellate District, Division Eight, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

4

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Troester v. Starbucks Corporation

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding** XXX on request pursuant to rule 8.548, Cal. Rules of Court
**Review Granted**
**Rehearing Granted**


_____

**Opinion No.** S234969
**Date Filed:** July 26, 2018

_____

**Court:**
**County:**
**Judge:**


_____

**Counsel:**

Setareh Law Group, Shaun Setareh, Thomas Segal, H. Scott Leviant; The Spivak Law Firm, David Spivak; Law Offices of Louis Benowitz, Louis Benowitz; Marlin & Saltzman and Stanley D. Saltzman for Plaintiff and Appellant.

Anna Kirsch and Hina Shah for Women's Employment Rights Clinic of Golden Gate University School of Law, Bet Tzedek, Centro Legal de la Raza, National Employment Law Project and Legal Aid at Work as Amici Curiae on behalf of Plaintiff and Appellant.

The Kralowec Law Group, Kimberly A. Kralowec; Kingsley & Kingsley and Ari J. Stiller for Consumer Attorneys of California and California Employment Lawyers Association as Amici Curiae on behalf of Plaintiff and Appellant.

Akin Gump Strauss Hauer & Feld, Rex S. Heinke, Gregory W. Knopp, Mark R. Curiel and Jonathan P. Slowik for Defendant and Respondent.

Sidley Austin, David R. Carpenter and Sonia A. Vucetic for California Retailers Association as Amicus Curiae on behalf of Defendant and Respondent.

Horvitz & Levy, Robert H. Wright, Felix Shafir and Lacey L. Esudillo for Association of Southern California Defense Counsel as Amicus Curiae on behalf of Defendant and Respondent.

Sheppard, Mullin, Richter & Hampton, Karin Dougan Vogel, Daniel De La Cruz, Richard J. Simmons and Jason W. Kearnaghan for Chamber of Commerce of the United States of America as Amicus Curiae on behalf of Defendant and Respondent.

Mitchell, Silberberg & Knupp, Emma Luevano and Justine Lazarus for Employers Group and California Employment Law Council Amici Curiae on behalf of Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Stanley D. Saltzman
Marlin & Saltzman
29800 Agoura Road, Suite 210
Agoura Hills, CA 91301-1555
(818) 991-8080

Rex S. Heinke
Akin Gump Strauss Hauer & Feld
1999 Avenue of the Stars, Suite 600
Los Angeles, CA 90067
(310) 229-1000