Filed 10/24/22
See concurring opinion

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| DELMER CAMP et al., | H049033 |
| Plaintiffs and Appellants, | (Santa Clara County Super. Ct. No. 19CV344872) |
| v. | |
| HOME DEPOT U.S.A., INC., | |
| Defendant and Respondent. | |

## I. INTRODUCTION

Plaintiffs Delmer Camp and Adriana Correa filed a putative class action for unpaid wages against defendant Home Depot U.S.A, Inc. (Home Depot). Plaintiffs alleged that Home Depot's electronic timekeeping system captured each minute worked by employees, but that due to Home Depot's quarter-hour rounding policy, employees were paid for less time than reflected in Home Depot's timekeeping system.

Home Depot moved for summary judgment on plaintiffs' complaint. Home Depot argued that plaintiff Correa did not have standing to bring a claim for unpaid wages because she did not lose any wages as a result of the rounding policy. Although it acknowledged that plaintiff Camp had lost a total of 470 minutes over approximately four and a half years due to the rounding policy, Home Depot contended it was still entitled to summary judgment because its rounding policy was neutral on its face, neutral as applied, and otherwise lawful under *See's Candy Shops, Inc. v. Superior Court* (2012)

210 Cal.App.4th 889 (*See's Candy*). The trial court granted the motion, finding that Home Depot's rounding policy met the standard articulated in *See's Candy*. Specifically, the trial court found that Home Depot's rounding policy "is neutral on its face and is used in such a manner that it will not result, over a period of time, in failure to compensate employees properly for all the time they have actually worked." The trial court also observed that under *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 (*Auto Equity*), the trial court was "not free to disregard binding appellate authority and reach a different conclusion."

On appeal, plaintiff Correa concedes that she was overpaid and cannot state a claim for unpaid wages. We will dismiss her appeal as abandoned.

On appeal, plaintiff Camp contends, among other arguments, that notwithstanding *See's Candy*, neither the Labor Code nor the relevant wage order authorizes time rounding that results in an individual employee failing to receive compensation for all time worked. Camp expressly states that he "do[es] not contend that all rounding is unlawful," and he acknowledges that "there are rounding systems that do not run afoul" of California's wage and hour laws.

Based on the particular facts of this case, and in view of the guidance and direction provided by more recent California Supreme Court opinions in *Troester v. Starbucks Corp.* (2018) 5 Cal.5th 829 (*Troester*) and *Donohue v. AMN Services, LLC* (2021) 11 Cal.5th 58 (*Donohue*), we conclude that Home Depot, in relying on its quarter-hour rounding policy, did not meet its burden to show that there was no triable issue of material fact regarding plaintiff Camp's claims for unpaid wages, where Home Depot could and did track the exact time in minutes that an employee worked each shift and those records showed that Camp was not paid for all the time he worked. We will therefore reverse the judgment against plaintiff Camp and direct the trial court to enter a new order denying Home Depot's summary judgment motion as to Camp.

We limit our analysis to the specific facts before us. We do not reach the issue of whether employer time rounding practices in other contexts comply with California law. For example, we do not address the application of *See's Candy* and its progeny to other circumstances, such as when an employer uses a neutral rounding policy due to the inability to capture the actual minutes worked by an employee. We also do not reach the issue of whether an employer who has the actual ability to capture an employee's minutes worked is required to do so. We observe that the California Supreme Court has indicated that in circumstances involving " 'the practical administrative difficulty of recording small amounts of time for payroll purposes,' " and where "neither a restructuring of work nor a technological fix is practical, it may be possible to reasonably estimate worktime— for example, through surveys, time studies, or, as *See's Candy* suggested, a fair rounding policy—and to compensate employees for that time." (*Troester*, *supra*, 5 Cal.5th at p. 848.) We observe that the California Supreme Court has since stated, however, that it "has never decided the validity of the rounding standard articulated in *See's Candy*." (*Donohue*, *supra*, 11 Cal.5th at p. 72.)

## II. BACKGROUND

### A. *Plaintiffs' Complaint*

Plaintiffs filed a putative class action for unpaid wages. Plaintiffs alleged that Home Depot's practice of rounding an hourly employee's total daily worktime to the nearest quarter hour, rather than using the actual worktime captured by the minute in Home Depot's timekeeping system "Kronos," resulted in the failure to pay wages to an employee for all worktime in the aggregate within the limitations period. The complaint alleged two causes of action: (1) unpaid minimum and overtime wages pursuant to, among other provisions, Labor Code section 510[1] and the relevant wage order and (2) unfair competition (Bus. & Prof. Code, § 17200 et seq.).

---

[1] All further statutory references are to the Labor Code unless otherwise indicated.

**B.** *Home Depot's Motion for Summary Judgment*

Home Depot moved for summary judgment on the ground that its practice of rounding time was neutral on its face, neutral as applied, and otherwise lawful under *See's Candy*, *supra*, 210 Cal.App.4th 889. Home Depot also argued that plaintiff Correa did not have standing to bring a claim for unpaid wages because she did not lose any wages as a result of the rounding policy.

In support of its motion, Home Depot presented the following evidence. Home Depot utilized an electronic software system, "Kronos," to record hourly employees' time punches for payroll purposes. Hourly employees punched in and out using Kronos at the beginning and end of their work shifts, as well as for meal breaks. The Kronos system captured the punch time to the minute.

Each hourly employee's total shift time was rounded to the nearest quarter-hour for calculating his or her pay for that period. "When total shift time falls between the quarter hour, a time increment of seven minutes or less is rounded down to the nearest quarter hour, while a time increment of eight minutes or more is rounded up to the next quarter hour." For example, if the total shift time was recorded as six hours and three minutes, the time was rounded down to 6.00 hours. If the total shift time was six hours and eight minutes, the shift time was rounded up to 6.25 hours.

The parties stipulated to the analysis of certain time and pay records for purposes of Home Depot's summary judgment motion. Specifically, the agreed-upon records covered a total of 13,387 hourly employees; 4,282,517 shifts; and 516,193 pay periods. The records were analyzed to compare actual time worked with time rounded under Home Depot's rounding policy over work shifts and over pay periods. The results were, as follows: (1) "For over 2.4 million shifts (56.6% [of the total]), employees were paid for the same or a greater number of minutes than [their] actual work time as a result of rounding[, and] employees lost minutes due to rounding on 43.4% of shifts"; (2) For shifts that gained minutes due to rounding, the average gain was 3.6 minutes, and on

4

shifts that lost minutes, the average loss was 3.5 minutes; (3) "Employees gained minutes in 254,210 (49.2%) pay periods, lost minutes in 242,966 (47.1%) pay periods, and were paid for actual work minutes[, meaning no gain or loss,] in 19,017 (3.7%) pay periods"; (4) For pay periods that gained minutes due to rounding, the average gain was 11.3 minutes, and for pay periods that lost minutes, the average loss was 10.4 minutes; and (5) "In the aggregate, employees in the ten percent class sample analyzed were paid for 339,331 more minutes (5,656 hours) than if Home Depot did not round time."

Plaintiff Correa was employed by Home Depot from March 2015, until October 2015. Correa's time and pay records showed that she did not gain or lose minutes "in the aggregate due to rounding, during the relevant period."

Plaintiff Camp was a nonexempt employee who had been working for Home Depot since March 2015. Camp's time and pay records showed that between March 30, 2015, and October 20, 2020, he worked 1,240 shifts.[2] At various points in time, he gained minutes or lost minutes due to rounding. During the entire period, however, he suffered a total net loss of 470 minutes, or approximately 7.83 hours, due to rounding.

C. *Plaintiffs' Opposition*

In opposition, plaintiff Correa conceded that she "was paid for all time worked" and that she "[could ]not state a claim for unpaid wages" based on Home Depot's rounding policy. Plaintiff Camp argued that, notwithstanding the opinions from various Courts of Appeal, neither the Labor Code nor the wage orders authorized time rounding

---

[2] We note that Home Depot's expert, Dr. G. Edward Anderson, indicated in a declaration in support of the motion for summary judgment that plaintiff Camp's time and pay records covered the period between March 30, 2015, and October 20, 2020. However, Home Depot in its separate statement of undisputed material facts indicated that Camp's time and pay records covered the period between March 20, 2015, and October 10, 2020. Because Home Depot's separate statement cites Dr. Anderson's declaration to support this fact, we use the dates recited in Dr. Anderson's declaration. Even if we used the dates recited in Home Depot's separate statement, it would not change our analysis in this case.

that results in an individual employee failing to receive compensation for all time worked. In this regard, Camp pointed to the evidence presented in Home Depot's own motion showing that he was not paid for 470 minutes of worktime.

### D. *The Trial Court's Order*

The trial court granted the motion for summary judgment after determining that Home Depot's rounding policy met the standard articulated in *See's Candy*. Specifically, the trial court found that Home Depot's rounding policy "is neutral on its face and is used in such a manner that it will not result, over a period of time, in failure to compensate employees properly for all the time they have actually worked." The trial court also observed that under *Auto Equity*, *supra*, 57 Cal.2d at page 455, it was "not free to disregard binding appellate authority and reach a different conclusion." Judgment was entered in favor of Home Depot and against plaintiffs.

## III.    DISCUSSION

As an initial matter, we determine that plaintiff Correa has abandoned her appeal. Plaintiffs in their opening brief state that they are not challenging the fact that Correa "was overpaid and cannot state a personal claim for unpaid wages." At oral argument in this court, plaintiffs expressly conceded that summary judgment was properly granted against plaintiff Correa. We therefore turn to the question of whether summary judgment was properly granted against plaintiff Camp and in favor of Home Depot.

### A. *The Standard of Review*

A party may move for summary judgment on the ground that the action has no merit. (Code Civ. Proc. § 437c, subd. (a)(1).) The motion must be granted if there is no triable issue of material fact and if the moving party is entitled to judgment as a matter of law. (*Id.*, subd. (c).) The moving party "bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if [the movant] carries [this] burden of production," the burden of production shifts to the

6

opposing party "to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).)

In determining whether the parties have met their respective burdens, "the court must 'consider all of the evidence' and 'all' of the 'inferences' reasonably drawn therefrom [citation], and must view such evidence [citations] and such inferences [citations], in the light most favorable to the opposing party." (*Aguilar, supra*, 25 Cal.4th at p. 843.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Id.* at p. 850, fn. omitted.)

"In reviewing a trial court's grant of summary judgment, . . . ' "[w]e take the facts from the record that was before the trial court when it ruled on that motion" ' and ' " ' "review the trial court's decision de novo . . . ." ' " ' " (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1039.)

## B. *General Wage and Hour Principles Under California Law*

Wage and hour claims in California are governed by the Labor Code and by wage orders adopted by the Industrial Welfare Commission (IWC). (*Troester, supra*, 5 Cal.5th at p. 839.) The wage orders have " 'the same dignity as statutes' " and "take precedence over the common law to the extent they conflict. [Citation.]" (*Troester, supra*, at p. 839.) The purpose of the Labor Code and wage orders is " 'the protection of employees—particularly given the extent of legislative concern about working conditions, wages, and hours when the Legislature enacted key portions of the Labor Code. [Citations.] In furtherance of that purpose, we liberally construe the Labor Code and wage orders to favor the protection of employees. [Citations.]' [Citation.]" (*Troester, supra*, at p. 839.)

In this case, the parties agree that plaintiff Camp is covered by IWC wage order No. 7-2001 (Wage Order No. 7), which governs the mercantile industry. (Cal. Code

Regs., tit. 8, § 11070, subds. 1 & 2(H) [mercantile industry includes any business "operated for the purpose of purchasing, selling, or distributing goods or commodities at wholesale or retail"].)  Wage Order No. 7 defines " '[h]ours worked' " as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." (Cal. Code Regs., tit. 8, § 11070, subd. 2(G).)  The phrase "suffered or permitted to work" (*ibid.*) "encompasses the time during which the employer knew or should have known that the employee was working on its behalf.  [Citation.]" (*Troester*, *supra*, 5 Cal.5th at p. 840.)

Wage Order No. 7 sets the minimum wage for employees in the mercantile industry and requires that wages must at least be paid to an employee "for all hours worked."  (Cal. Code Regs., tit. 8, § 11070, subd. 4(A); see *Troester*, *supra*, 5 Cal.5th at p. 840 [explaining similar provision in IWC wage order No. 5].)  Employees covered by Wage Order No. 7 are entitled to at least one and one-half times their regular rate of pay "for all hours worked" in excess of eight hours in a workday or over 40 hours in a workweek.  (Cal. Code Regs., tit. 8, § 11070, subd. 3(A); see *Troester*, *supra*, at p. 840 [explaining similar provision in IWC wage order No. 5].)

Similar to these wage order provisions, "[t]he Labor Code also contemplates that employees will be paid for all work performed."  (*Troester*, *supra*, 5 Cal.5th at p. 840.) Section 510, subdivision (a) states in part, "*Any work* in excess of eight hours in one workday and *any work* in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. *Any work* in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee.  In addition, *any work* in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee." (Italics added.)  Section 510 "recognizes

8

certain exceptions in various statutorily authorized alternative workweeks, but no others." (*Troester*, *supra*, at p. 840.)

At issue in this case is whether there is a triable issue of material fact regarding whether plaintiff Camp has a claim for unpaid wages, where Home Depot could capture and did capture the exact number of minutes that Camp worked each shift but, due to Home Depot's quarter-hour time rounding policy, Camp was not paid for all the time he worked according to Home Depot's own timekeeping records. We therefore analyze the legal authority regarding time rounding, beginning with *See's Candy,* and concluding with more recent California Supreme Court opinions in *Troester*, *supra*, 5 Cal.5th 829 and *Donohue*, *supra*, 11 Cal.5th 58. Although those California Supreme Court opinions addressed different factual circumstances than the instant case, we believe those opinions provide helpful guidance and direction to employers and courts regarding time rounding.

## C. See's Candy Shops, Inc. v. Superior Court *and its progeny*

In *See's Candy*, the appellate court concluded that employer time rounding policies may be lawful in California. (*See's Candy*, *supra*, 210 Cal.App.4th at p. 907.) In that case, the employer used a "Kronos" timekeeping software system to record hours worked by employees. (*Id.* at p. 892.) "Employees [were] required to 'punch' into the system . . . at the beginning and end of their shifts, as well as for lunch breaks. A Kronos punch show[ed] the actual time (to the minute) when the employee punched into the system." (*Ibid.*) Pursuant to the employer's time rounding policy, "in and out punches [were] rounded (up or down) to the nearest tenth of an hour (every six minutes beginning with the hour mark). The Kronos time punches [were] thus rounded to the nearest three-minute mark." (*Ibid.*)

The plaintiff, who was a nonexempt hourly employee, filed a wage and hour class action for, among other claims, failure to pay for all work performed and failure to pay overtime. (*See's Candy*, *supra*, 210 Cal.App.4th at p. 893.) A class was certified on the issue of whether the employer's time rounding policy resulted in a loss of compensation

9

to class members.  (*Ibid.*)  The employer contended the policy was consistent with federal and state law.  (*Ibid.*)  The plaintiff employee moved for summary adjudication of several of the employer's affirmative defenses, including the employer's defense that its rounding policy was consistent with state and federal laws and did not deprive employees of full compensation.  (*Id.* at p. 894.)  The trial court granted summary adjudication in the plaintiff's favor.  (*Id.* at p. 899.)  The employer filed a petition for writ of mandate challenging the trial court's summary adjudication order.  (*Ibid.*)

The appellate court in *See's Candy* observed that "[a]lthough California employers have long engaged in employee time-rounding, there is no California statute or case law specifically authorizing or prohibiting this practice."  (*See's Candy*, *supra*, 210 Cal.App.4th at p. 901.)  The court explained that a federal regulation adopted under the Fair Labor Standards Act of 1938 (FLSA; 29 U.S.C. § 201 et seq.) permits time-rounding.  (*See's Candy*, *supra*, at p. 901.)  The federal regulation states:  " 'Rounding' practices.  It has been found that in some industries, particularly where time clocks are used, there has been the practice for many years of recording the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour.  Presumably, this arrangement averages out so that the employees are fully compensated for all the time they actually work.  For enforcement purposes this practice of computing working time will be accepted, provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked."  (29 C.F.R. § 785.48(b) (2021).)

The appellate court in *See's Candy* observed that the Division of Labor Standards Enforcement (DLSE), the agency that enforces California's wage and hour laws, had "adopted the federal regulation" in its Enforcement Policies and Interpretations Manual (DLSE Manual) (2002 rev.).  (*See's Candy*, *supra*,  210 Cal.App.4th at p. 902.)  The court reasoned that, "[i]n the absence of controlling or conflicting California law, California courts generally look to federal regulations under the FLSA for guidance.

[Citation.] The policies underlying the federal regulation—recognizing that time-rounding is a practical method for calculating worktime and can be a neutral calculation tool for providing full payment to employees—apply equally to the employee-protective policies embodied in California labor law. Assuming a rounding-over-time policy is neutral, both facially and as applied, the practice is proper under California law because its net effect is to permit employers to efficiently calculate hours worked without imposing any burden on employees. [Citation.] [¶] Moreover, . . . the rounding practice has long been adopted by employers throughout the country. Under these circumstances, 'it is reasonable for the court to construe the requirements of the [California] wage law in a manner consistent with [the] FLSA. To hold otherwise would preclude [California] employers from adopting and maintaining rounding practices that are available to employers throughout the rest of the United States.' [Citation.]" (*Id.* at p. 903.)

In reaching its conclusion, the appellate court in *See's Candy* rejected the plaintiff's argument that the federal time rounding regulation was inconsistent with Labor Code section 510, subdivision (a). The court stated that section 510, subdivision (a) "has nothing to do with rounding or calculating time. Rather this provision sets the multiplier for the rate at which 'Any' overtime work must be paid. (§ 510, subd. (a).)" (*See's Candy*, *supra*, 210 Cal.App.4th at p. 905.)

The appellate court in *See's Candy* ultimately held that "the rule in California is that an employer is entitled to use the nearest-tenth rounding policy if the rounding policy is fair and neutral on its face and 'it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.' (29 C.F.R. § 785.48(b) (2012); see DLSE Manual [(2002 rev.)], §§ 47.1, 47.2.)" (*See's Candy*, *supra*, 210 Cal.App.4th at p. 907.) In the case before it, the appellate court found that the employer had raised a triable issue of material fact based on evidence that "most of the class members, including [the named plaintiff], were fully compensated for every minute of their time (including for overtime

11

pay) and the majority was paid for more time than their actual working time." (*Id.* at p. 908, fn. omitted.)  In a footnote, the court stated that, "[a]lthough a minority of the employees (33 percent) had a net loss of a minimal amount during the class period, it is questionable whether those employees would be entitled to a recovery for these wages if [the employer] establishes that over time the rounding policy is neutral." (*Id.* at p. 908, fn. 7, italics omitted.)

In the decade since the *See's Candy* opinion was filed in 2012, other Courts of Appeal have found time rounding lawful under California law.  (See, e.g., *David v. Queen of Valley Medical Center* (2020) 51 Cal.App.5th 653, 664-665 (*David*) ; *AHMC Healthcare, Inc. v. Superior Court* (2018) 24 Cal.App.5th 1014 (*AHMC*) .)  In *AHMC*, for example, the appellate court found the employer's quarter-hour rounding policy lawful and determined there was no triable issue of material fact, even though "a bare majority" of employees at one of two locations "lost minor sums during a discrete period." (*AHMC*, *supra*, at p. 1027; see *id.* at p. 1017.)  In that case, the employees did not dispute that the federal regulation regarding rounding (29 C.F.R. § 785.48(b)) "is applicable to claims made under state law." (*AHMC*, *supra*, at p. 1023, fn. 9.)  The appellate court, relying on the federal regulation, explained that the "the regulation does not require that every employee gain or break even over every pay period or set of pay periods analyzed; fluctuations from pay period to pay period are to be expected under a neutral system." (*Id.* at p. 1027.)  The court determined that a rounding policy "is fair and neutral and does not systematically undercompensate employees where it results in a net surplus of compensated hours and a net economic benefit to employees viewed as a whole." (*Id.* at p. 1028.)

## D.  Troester v. Starbucks Corp.

In *Troester*, which was filed six years after *See's Candy*, the California Supreme Court considered an employee's claim for unpaid wages (see Lab. Code, §§ 510, 1194, 1197) where the employer required employees to work off the clock several minutes per

shift. (*Troester*, *supra*, 5 Cal.5th at pp. 834-835.) The court held that the federal de minimis doctrine (see 29 C.F.R. § 785.47),[3] which may "in some circumstances . . . excuse the payment of wages for small amounts of otherwise compensable time upon a showing that the bits of time are administratively difficult to record" (*Troester*, *supra*, at p. 835), did not apply to state law claims for unpaid wages in this circumstance. (*Id*. at pp. 834-835.) Although the court in *Troester* did not directly analyze the propriety of employer time rounding, the opinion provides helpful guidance regarding (1) the circumstance of a federal wage and hour standard that has no apparent counterpart in California's wage and hour laws, and (2) the proper interpretation of various Labor Code and wage order provisions.

In reaching its conclusion that the federal de minimis rule did not apply to California wage and hour claims, the California Supreme Court explained that

[3] The federal regulation regarding the de minimis doctrine – part 785.47 of title 29 of the Code of Federal Regulations (2021) – is located in the same subpart as, and immediately precedes, the federal time rounding regulation at issue in the instant case, that is, part 785.48 of title 29 of the Code of Federal Regulations. The federal regulation regarding the de minimis doctrine states: "In recording working time under the [FLSA], insubstantial or insignificant periods of time beyond the scheduled working hours, which cannot as a practical administrative matter be precisely recorded for payroll purposes, may be disregarded. The courts have held that such trifles are de minimis. (*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946)) This rule applies only where there are uncertain and indefinite periods of time involved of a few seconds or minutes duration, and where the failure to count such time is due to considerations justified by industrial realities. An employer may not arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time or practically ascertainable period of time he is regularly required to spend on duties assigned to him. See *Glenn L. Martin Nebraska Co. v. Culkin*, 197 F. 2d 981, 987 (C.A. 8, 1952), cert. denied, 344 U.S. 866 (1952), rehearing denied, 344 U.S. 888 (1952), holding that working time amounting to $ 1 of additional compensation a week is 'not a trivial matter to a workingman,' and was not de minimis; *Addison v. Huron Stevedoring Corp.*, 204 F. 2d 88, 95 (C.A. 2, 1953), cert. denied 346 U.S. 877, holding that 'To disregard workweeks for which less than a dollar is due will produce capricious and unfair results.' *Hawkins v. E. I. du Pont de Nemours & Co.*, 12 W.H. Cases 448, 27 Labor Cases, para. 69,094 (E.D. Va., 1955), holding that 10 minutes a day is not de minimis." (29 C.F.R. § 785.47 (2021).)

" '[f]ederal regulations provide a level of employee protection that a state may not derogate. Nevertheless, California is free to offer greater protection. We have stated that, "[*a*]*bsent convincing evidence of the IWC's intent to adopt the federal standard for determining whether time . . . is compensable under state law,* we *decline to import any federal standard, which expressly eliminates substantial protections to employees, by implication*." [Citation.] More recently, we have "cautioned against 'confounding federal and state labor law' [citation] and explained 'that *where the language or intent of state and federal labor laws substantially differ, reliance on federal regulations or interpretations to construe state regulations is misplaced*.' " ' [Citation.] On a number of occasions, we have recognized the divergence between IWC wage orders and federal law, generally finding state law more protective than federal law. [Citations.]" (*Troester*, *supra*, 5 Cal.5th at pp. 839-840, italics added.)

The California Supreme Court observed that Labor Code section 510 and the relevant wage order "contemplate[] that employees *will be paid for all work performed*." (*Troester*, *supra*, 5 Cal.5th at p. 840, italics added.) The court determined that the federal de minimis doctrine, which "permit[s] employers under some circumstances to require employees to work as much as 10 minutes a day without compensation is less protective than a rule that an employee must be paid for 'all hours worked' [citation] [under the relevant wage order] or '[a]ny work' beyond eight hours a day (Lab. Code, § 510, subd. (a)). And there is no ' "convincing evidence of the IWC's intent to adopt the federal standard." ' [Citation.] Nothing in the language of the wage orders or Labor Code shows an intent to incorporate the federal de minimis rule articulated in [federal caselaw] or the federal regulation. Although [the United States Supreme Court opinion articulating the de minimis rule] has been the law for 70 years and has been incorporated into the Code of Federal Regulations for over 50 years, neither the Labor Code statutes nor any wage order has been amended to recognize a de minimis exception. [The defendant employer] cites no statutory or regulatory history, and we have found none,

14

that indicates an intent by the IWC or the Legislature to impliedly adopt such a rule." (*Id.* at pp. 840-841.)

The California Supreme Court further observed that the de minimis doctrine was discussed in the DLSE Manual. (*Troester*, *supra*, 5 Cal.5th at p. 841.) The 2002 version of the DLSE Manual "adopt[ed] virtually verbatim the federal regulation on this issue. [Citation.]" (*Troester*, *supra*, at p. 841.) The court explained, however, that "unlike wage orders, the DLSE Manual is not binding on [a] court. [Citation.] Although statements in the policy manual may be considered for their persuasive value, the DLSE Manual contains rules that have not been subject to the Administrative Procedure Act (Gov. Code, § 11340 et seq.) and do not represent an exercise of quasi-legislative authority by an administrative agency. [Citations.]" (*Ibid.*) The court was likewise unpersuaded by the discussion of the de minimis rule in DLSE opinion letters, which were "also not binding." (*Troester*, *supra*, at p. 841.) The court found that "the DLSE's adoption of the federal de minimis rule appears to be based on the general proposition that federal case law construing the FLSA 'may sometimes provide guidance to state courts in interpreting the IWC Orders.' [Citation.]" (*Ibid.*) The court explained that it would "not presume the IWC intended to incorporate a less protective federal rule without evidence of such intent, and [the court saw] no sign of such intent here." (*Ibid.*)

The California Supreme Court further concluded that although California itself "has a de minimis rule that is a background principle of state law," the state de minimis rule "is not applicable to the regularly reoccurring activities that are principally at issue here. The relevant statutes and wage order do not allow employers to require employees to routinely work for minutes off the clock without compensation." (*Troester*, *supra*, 5 Cal.5th at p. 848.) The court explained that "the regulatory scheme of which the relevant [California] statutes and wage order provisions are a part is indeed concerned with 'small things.' " (*Id.* at p. 844.) The court stated that "[i]n light of the wage order's remedial purpose requiring a liberal construction, its directive to compensate employees

15

for all time worked, the evident priority it accorded that mandate notwithstanding customary employment arrangements, and its concern with small amounts of time, . . . the de minimis doctrine has no application under the circumstances presented here. An employer that requires its employees to work minutes off the clock on a regular basis or as a regular feature of the job may not evade the obligation to compensate the employee for that time by invoking the de minimis doctrine. As the facts here demonstrate, a few extra minutes of work each day can add up. . . . [The plaintiff] is seeking payment for 12 hours and 50 minutes of compensable work over a 17-month period, which amounts to $102.67 at a wage of $8 per hour. That is enough to pay a utility bill, buy a week of groceries, or cover a month of bus fares. What [the defendant employer] calls 'de minimis' is not de minimis at all to many ordinary people who work for hourly wages." (*Id.* at p. 847.)

Lastly, the California Supreme Court recognized that "one of the main impetuses behind the de minimis doctrine in wage cases is 'the practical administrative difficulty of recording small amounts of time for payroll purposes.' [Citations.]" (*Troester*, *supra*, 5 Cal.5th at p. 848.) The court determined, however, that "*employers are in a better position than employees to devise alternatives that would permit the tracking of small amounts of regularly occurring worktim*e. One such alternative, which it appears [the defendant] eventually resorted to here, was to restructure the work so that employees would not have to work before or after clocking out. *Moreover, as noted, technological advances may help with tracking small amounts of time.* An employer may be able to customize and adapt available time tracking tools or develop new ones when no off-the-shelf product meets its needs. *And even when neither a restructuring of work nor a technological fix is practical, it may be possible to reasonably estimate worktime*—for example, through surveys, time studies, or, as *See's Candy* suggested, a fair rounding policy—and to compensate employees for that time. Under the circumstances of this

16

case, we decline to adopt a rule that would require the employee to bear the entire burden of any difficulty in recording regularly occurring worktime." (*Ibid.*, italics added.)

### E. Donohue v. AMN Services, LLC

More recently, in *Donohue*, *supra*, 11 Cal.5th 58, which was filed one day after the trial court granted Home Depot's summary judgment motion in the present case, the California Supreme Court addressed the issue of time rounding in the specific context of meal periods. The court held that "employers cannot engage in the practice of rounding time punches—that is, adjusting the hours that an employee has actually worked to the nearest preset time increment—in the meal period context." (*Id.* at p. 61.) The court explained that "meal period provisions are designed to prevent even minor infringements on meal period requirements, and rounding is incompatible with that objective." (*Ibid.*) In this regard, "[s]mall rounding errors can amount to a significant infringement on an employee's right to a 30-minute meal period," and the requirement that an employer must provide an additional hour of pay for any meal period violation ("premium pay"), "no matter how minor" and "by even a few minutes," supported the conclusion that rounding was improper in the meal period context. (*Id.* at p. 69.)

In analyzing the issue of rounding in the meal period context, the California Supreme Court observed that in *See's Candy*, the Court of Appeal had "concluded that employers may use rounded time punches to calculate regular and overtime wages if the rounding policy is neutral on its face and as applied. [Citation.]" (*Donohue*, *supra*, 11 Cal.5th at p. 71.) The California Supreme Court expressly stated, however, that it "has never decided the validity of the rounding standard articulated in *See's Candy*" and that it was "not asked to do so here." (*Id.* at p. 72.) The court went on to explain that "even assuming the validity of *See's Candy* [], a rounding policy in the meal period context does not comport with its neutrality standard" (*ibid.*) in view of the health and safety benefits of full meal periods for employees and in view of an employee's right to premium pay for shortened meal periods. (*Id.* at pp. 72-73.)

17

Significantly, the California Supreme Court observed that "rounding was developed as a means of 'efficiently calculat[ing] hours worked' and wages owed to employees (*See's Candy* [], *supra*, 210 Cal.App.4th at p. 903) and is useful 'in some industries, particularly where time clocks are used' [citation]. But technological advances may help employers to track time more precisely, and 'employers are in a better position than employees to devise alternatives . . . .' [Citation.]" (*Donohue*, *supra*, 11 Cal.5th at p. 73.) The court observed that (1) the electronic timekeeping system in the case before it "actually had to take the extra step of converting the unrounded time punches to rounded ones," (2) "it [was] not clear what efficiencies were gained from this practice," and (3) the employer "eventually switched to a new timekeeping system that does not round time punches after [the] lawsuit was filed." (*Id.* at p. 74.) The California Supreme Court stated that "[a]s technology continues to evolve, the practical advantages of rounding policies may diminish further." (*Ibid*.)

**F.  *Analysis***

In the present case, the record reflects that Home Depot used a "Kronos" electronic timekeeping system that recorded the time to the minute that an employee punched in or out during a shift, including for meal breaks. Home Depot then applied a quarter-hour rounding policy to the nonexempt employee's total shift time. The evidence further reflects that plaintiff Camp lost more than seven hours of worktime between March 2015, and October 2020, due to Home Depot's quarter-hour time rounding policy. Thus, Home Depot captured the exact number of minutes that Camp worked for every shift but, due to its quarter-hour time rounding policy, he was not paid for all those minutes. Based on this record we determine that Home Depot, in relying on its quarter-hour time rounding policy, fails to meet its burden to show that there is no triable issue of material fact regarding whether Camp was paid for all the time he worked. We reach this conclusion for the following reasons.

First, the California Supreme Court has stated that the Labor Code and the relevant wage order "contemplate[] that employees will be paid for all work performed." (*Troester*, *supra*, 5 Cal.5th at p. 840; see Lab. Code, § 510, subd. (a) [requiring payment for "[a]ny work"]; Cal. Code Regs., tit. 8, § 11070, subds. 2(G) [" '[h]ours worked' " means "all the time" the employee has worked], 4(A) [minimum wage must be paid "for all hours worked"] & 3(A) [overtime pay required "for all hours worked" in excess of eight hours in a day or over 40 hours in a week].) In this case, there is evidence that plaintiff Camp was not paid for all work performed.

Second, the California Supreme Court has explained that "the regulatory scheme of which the relevant [California] statutes and wage order provisions are a part is . . . concerned with 'small things.' " (*Troester*, *supra*, 5 Cal.5th at p. 844.) By referring to "the wage order's remedial purpose requiring a liberal construction, its directive to compensate employees for all time worked, the evident priority it accorded that mandate notwithstanding customary employment arrangements, and its concern with small amounts of time" (*id*. at p. 847), the court has indicated that even small amounts of worktime—indeed amounts measured in minutes—are compensable where the worktime is regularly occurring. Further, as evidenced in this case, a few extra minutes of worktime periodically lost due to a purportedly neutral time rounding policy can add up over time. Here, the evidence reflects that plaintiff Camp lost more than seven hours of worktime due to Home Depot's quarter-hour rounding policy.

Third, the California Supreme Court has stated that " ' "[a]bsent convincing evidence of the IWC's intent to adopt the federal standard for determining whether time . . . is compensable under state law, [the court has] decline[d] to import any federal standard, which expressly eliminates substantial protections to employees, by implication." [Citation.]' " (*Troester*, *supra*, 5 Cal.5th at p. 839.) Here, the federal regulation that authorizes rounding requires only that the rounding practice over time average out to "employees" as a whole, not necessarily as to an individual employee.

(29 C.F.R. § 785.48(b) (2021); see *Corbin v. Time Warner Entertainment-Advance/Newhouse Partnership* (9th Cir. 2016) 821 F.3d 1069, 1077; *AHMC*, *supra*, 24 Cal.App.5th at p. 1028.)  The federal regulation has no analog in the Labor Code or in the applicable wage order.  The California Supreme Court has " ' "cautioned against 'confounding federal and state labor law' [citation] and explained 'that where the language or intent of state and federal labor laws substantially differ, reliance on federal regulations or interpretations to construe state regulations is misplaced.' " ' [Citation.]" (*Troester*, *supra*, at p. 839.)  Here, there is not merely a difference in language, but a complete absence of language, in the Labor Code or in the applicable wage order, authorizing time rounding that results in the underpayment of an individual employee for all time worked, where the employer can capture and has captured the employee's worktime in minute increments.  Further—adapting the California Supreme Court's language in *Troester*—although time rounding "has been incorporated into the Code of Federal Regulations for over 50 years, neither the Labor Code statutes nor any wage order has been amended to recognize [a time rounding exception to the requirement that an employee be paid for all time worked].  [Home Depot] cites no statutory or regulatory history, and we have found none, that indicates an intent by the IWC or the Legislature to impliedly adopt such a rule." (*Troester*, *supra*, at p. 841; see *Donohue*, *supra*, 11 Cal.5th at p. 71 [federal rounding regulation "first promulgated in 1961"].)

Fourth, the California Supreme Court appears to have called into question the efficiencies historically attributed to time rounding given that advances in technology have enabled employers to more easily and more precisely capture time worked by employees.  The court has observed that "rounding was developed as a means of 'efficiently calculat[ing] hours worked' and wages owed to employees [citation] and is useful 'in some industries, particularly where time clocks are used' [citation].  But technological advances may help employers to track time more precisely, and 'employers are in a better position than employees to devise alternatives . . . .' [Citation.]"

20

(*Donohue*, *supra*, 11 Cal.5th at p. 73.)  The court observed that (1) the electronic timekeeping system in the case before it "actually had to take the extra step of converting the unrounded time punches to rounded ones," (2) "it [was] not clear what efficiencies were gained from this practice," and (3) the employer "eventually switched to a new timekeeping system that does not round time punches after [the] lawsuit was filed." (*Id.* at p. 74.)  The California Supreme Court stated that "[a]s technology continues to evolve, the practical advantages of rounding policies may diminish further." (*Ibid*.; see also *Troester*, *supra*, 5 Cal.5th at p. 848 ["technological advances may help with tracking small amounts of time"].)  Likewise, in this case, it is not clear that any efficiencies were gained by Home Depot in capturing time worked in minutes by plaintiff Camp and then rounding that time to the nearest quarter hour.

Home Depot contends that "rounding makes it easier for employers to produce verifiable wage statements, because unrounded time does not easily translate to the decimal system used to calculate employee pay," and "[r]ounding also results in a pay stub that is easier for employees to decipher."  As an example, Home Depot argues that "[p]aying employees to the quarter-hour results in a readily verifiable paycheck because partial hours are shown in quarterly decimals—for instance, 6.25 hours for a 6 hour, 10 minute shift.  By contrast, that same time period, if paid without using rounding, would show as 6.1666 … on an employee's wage statement."  We are not persuaded by Home Depot's argument that the calculation of wages is "easier" with rounded time. More importantly, Home Depot cites no provision in California law that privileges arithmetic simplicity over paying employees for all time worked.

Home Depot also contends that "punch times captured by a timekeeping system" may not "accurately reflect an employee's work time."  Home Depot argues that an employee might engage in a personal phone call or talk to a coworker while still punched in, and "[t]hese minutes do not constitute compensable time even though the employee is

21

'on the clock.' " Home Depot contends that "[r]ounding is a statistically neutral way to smooth out those uncertainties by adding or subtracting time at set intervals."

We are not persuaded by this argument as Home Depot fails to provide evidence to support this contention. To the contrary, in support of its summary judgment motion, Home Depot submitted a copy of its written Kronos procedures, which instructs that, "[a]s a rule, you should not delete punches from timecards because they represent actual times that associates started and stopped working." Moreover, Home Depot fails to provide any authority showing that the Legislature or the IWC authorizes rounding that results in the payment of wages for less than the actual time worked in order to "smooth out . . . uncertainties" in employee's work time.

Home Depot also contends that "an employer may 'measure' compensation in various ways" and employers are "free to choose a 'convenient standard' or method for calculating and compensating work time." In support of this contention, Home Depot cites Wage Order No. 7 (Cal. Code Regs., tit. 8, § 11070, subd. 4(B)) and *Oman v. Delta Air Lines, Inc*. (2020) 9 Cal.5th 762, at pages 781 to 782 (*Oman*).

We are not persuaded that these authorities authorize time rounding that results in the failure to pay an employee for all time worked. Wage Order No. 7 provides that compensation may be "measured by time, piece, commission, or otherwise." (Cal. Code Regs., tit. 8, § 11070, subd. 4(B).) In *Oman*, the California Supreme Court stated that "[a]lthough nonexempt employee pay is often by the hour, state law expressly authorizes employers to calculate compensation by the task or piece, by the sale, or by any other convenient standard. (See Lab. Code, § 200, subd. (a) [compensation may be 'fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation']; [Cal. Code Regs., tit. 8, § 11090, subd.] 4(B) [compensation may be 'measured by time, piece, commission, or otherwise'].)" (*Oman*, *supra*, 9 Cal.5th at p. 781.) Here, the record reflects that Home Depot chose to pay nonexempt employees, such as plaintiff Camp, by the hour. Where an employer has agreed to pay compensation

22

as measured by a unit of "time" (§ 200, subd. (a); Cal. Code Regs., tit. 8, § 11070, subd. 4(B); *Oman*, *supra*, 9 Cal.5th at pp. 781-782), none of the authorities cited by Home Deport indicates that an employer may round captured work minutes where it results in the failure to pay an employee for all minutes worked.

In sum, based on the record in this case, we determine that Home Depot, in relying on its quarter-hour rounding policy, did not meet its burden to show that there is no triable issue of material fact regarding plaintiff Camp's claims for unpaid wages. Under the guidance and direction of *Troester* and *Donohue*, which we must follow as an intermediate court (see *Auto Equity*, *supra*, 57 Cal.2d at p. 455), if an employer, as in this case, can capture and has captured the exact amount of time an employee has worked during a shift, the employer must pay the employee for "all the time" worked. (Cal. Code Regs., tit. 8, § 11070, subd. 2(G); see Cal. Code Regs., tit. 8, § 11070, subds. 3(A) & 4(A); Lab. Code, § 510, subd. (a); *Troester*, *supra*, 5 Cal.5th at p. 840.) Because Home Depot did not meet its burden to show that there is no triable issue of material fact regarding Camp's claims for unpaid wages, summary judgment should not have been granted in favor of Home Depot and against Camp.

Lastly, we observe that it has been well settled for nearly a decade that neutral time rounding is lawful under California law. (See, e.g., *See's Candy*, *supra*, 210 Cal.App.4th 889; *David*, *supra*, 51 Cal.App.5th at pp. 664-665; *AHMC*, *supra*, 24 Cal.App.5th 1014.) The California Supreme Court itself has indicated that in circumstances involving " 'the practical administrative difficulty of recording small amounts of time for payroll purposes,' " and where "neither a restructuring of work nor a technological fix is practical, it may be possible to reasonably estimate worktime—for example, through surveys, time studies, or, as *See's Candy* suggested, a fair rounding policy—and to compensate employees for that time." (*Troester*, *supra*, 5 Cal.5th at p. 848.) The California Supreme Court, however, "has never decided the validity of the rounding standard articulated in *See's Candy*." (*Donohue*, *supra*, 11 Cal.5th at p. 72.)

*Troester* and *Donohue* appear to suggest, as we have explained above, that the application of *See's Candy* should be reexamined in circumstances where employee worktime in minutes can be captured and has been captured by the employer and, as a result of a quarter-hour rounding system, the employee is not compensated for all actual work time. The California Supreme Court has stated that the Labor Code and California wage orders "contemplate[] that employees will be paid for all work performed" (*Troester*, *supra*, at p. 840), that this regulatory scheme in California "is indeed concerned with 'small things' " (*id.* at p. 844), and that "a few extra minutes of work each day can add up" (*id.* at p. 847). As an intermediate court, we are bound to apply the law as guided, directed, and interpreted by the California Supreme Court. As the California Supreme Court has not directly decided the rounding issue in the particular circumstance of this case, we respectfully invite the court to "decide[] the validity of the rounding standard articulated in *See's Candy*" (*Donohue*, *supra*, at p. 71) in the limited circumstance here, where the employer can capture and has captured all the minutes an employee has worked and then applies a quarter-hour rounding policy. In this regard, we also respectfully invite the California Supreme Court to review the issue of neutral time rounding by employers and to provide guidance on the propriety of time rounding by employers, especially in view of the "technological advances" that now exist which "help employers to track time more precisely." (*Id.* at p. 73.)

## IV.  DISPOSITION

The judgment against plaintiff Delmer Camp is reversed, and the matter is remanded. The trial court is directed to vacate the order granting summary judgment against plaintiff Camp and to enter a new order denying the motion as to plaintiff Camp.

Plaintiff Adriana Correa's appeal is dismissed as abandoned.

Defendant Home Depot and plaintiff Correa are to bear their own costs. Costs are awarded to plaintiff Camp.

24

_____

BAMATTRE-MANOUKIAN, ACTING P.J.


I CONCUR:




_____

DANNER, J.




*Camp et al. v. Home Depot, U.S.A., Inc.*
**H049033**

WILSON, J., Concurring.

I respectfully concur with the disposition reached in the majority opinion. I also agree with its analysis that, under the facts of this case and in light of recent Supreme Court guidance in *Troester v. Starbucks* (2018) 5 Cal.5th 829 (*Troester*) and *Donohue v. AMN Services*, *LLC* (2021) 11 Cal.5th 58 (*Donohue*) there exists a triable issue of material fact regarding whether Camp was paid for all time worked. I write separately to explain why I believe the majority's decision today is a clear departure from *See's Candy Shops*, *Inc*. *v. Superior Court* (2012) 210 Cal.App.4th 889 (*See's Candy*) and more fully explain why that departure is appropriate under current California law.

Under the circumstances of this case, Home Depot captured Camp's exact work minutes via an electronic timekeeping system (Kronos), but those minutes were automatically rounded to the nearest quarter-hour, leading to an underpayment of wages. Home Depot's own expert concluded that, between March 30, 2015 and October 20, 2020, Camp averaged a net loss of 0.38 minutes per shift due to rounding over 1,240 shifts worked.[1] This equates to a total net loss of 470 minutes, or approximately 7.83 hours, over that time span. In other words, Camp lost nearly a full day's pay due to rounding.

As the majority opinion reflects, these facts are similar to those found in *See's Candy* where the employer used the Kronos timekeeping system to record employee work hours. Instead of rounding to the nearest quarter-hour, the employer used the nearest-tenth rounding policy. The plaintiff was a nonexempt employee who, it was later determined, received an " 'aggregate shortfall' " of wages between October 2005 to March 2010. (*See's Candy*, *supra*, 210 Cal.App.4th at p. 895.)

---

[1] As noted in the majority in the opinion, the dates set forth in Home Depot's separate statement of undisputed material facts do not coincide with those set forth in the declaration of Home Depot's expert, Dr. G. Edward Anderson. I have used the dates identified by Dr. Anderson, as I presume those are correct.

Under the analysis in *See's Candy*, California law would permit underpayment in such cases because, on average, a substantial percentage of employees were paid for either the exact time—or more time—than they worked. However, I conclude that in light of California's wage and hour laws and strong public policy favoring timely payment of wages for all hours worked, such a practice is unlawful if it results in the underpayment of all wages due to an employee.

## A. *California wage and hour laws*

In California, "wage and hour claims are . . . governed by two . . . sources of authority:  the provisions of the Labor Code, enacted by the Legislature, and a series of . . . wage orders, adopted by the [Industrial Welfare Commission (IWC)]." (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1026.)  Both the IWC's wage orders and California's wage and hour laws are "liberally construe[d] . . . to favor the protection of employees." (*Augustus v. ABM Security Services, Inc.* (2016) 2 Cal.5th 257, 262.)  Pursuant to Wage Order No. 7, an employer is required to pay employees no less than the applicable minimum wage for all "hours worked." (Cal. Code Regs., tit. 8, § 11070, subd. 4(B).)  " 'Hours worked' " is defined as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." (*Id*. at subd. 2(G).)  Wage Order No. 7, subdivision 7, further requires employers to keep "accurate information with respect to each employee including," among other things, "[t]ime records showing when the employee begins and ends each work period." (*Id*. at subd. 7(3).)

Pursuant to Labor Code section 204, subdivision (a),[2] "[a]ll wages, other than those mentioned in Section 201, 201.3, 202, 204.1, or 204.2, earned by any person in any employment are due and payable twice during each calendar month, on days designated

---

[2] Unspecified statutory references are to the Labor Code.

in advance by the employer as the regular paydays." In addition, under section 216, it is a criminal offense for an employer to willfully fail to pay wages owed.

Section 510 provides, in pertinent part: "Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee." (§ 510, subd. (a).)

It is this statutory and regulatory framing which supports California's long-standing public policy in favor of ensuring employees are paid for all time worked. As I explain below, *See's Candy* incorrectly overlooked these structural elements in analyzing the time rounding practice before it.

### *B*. **See's Candy's** *failure to give sufficient weight to California's strong public policy in favor of employees*

In considering the practice of time-rounding, *See's Candy* observed that "[a]lthough California employers have long engaged in employee time-rounding, there is no California statute or case law specifically authorizing or prohibiting this practice." (*See's Candy*, *supra*, 210 Cal.App.4th at p. 901.) While this assertion is facially correct, it unfortunately ignores the broader principle requiring "full and prompt payment of an employee's earned wages." (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 82.) That principle is simply not satisfied by the possibility that other employees may receive additional wages due to time-rounding, nor is it satisfied by the possibility that an employee who loses wages for a given shift or pay period may end up gaining wages on a different shift or pay period. The appropriate focus for courts must be whether a particular employee was underpaid as a result of the rounding system at issue.

As a result, I respectfully disagree with *See's Candy*'s conclusion that there is no California law addressing rounding. Section 204 ensures that employees, at specified intervals, receive "[a]ll wages . . . earned," which necessarily means payment for all time

3

worked.  Section 510 implicitly addresses the precise calculation of work time because an employer is required to pay overtime when the employee performs "any work" in excess of the specified periods.[3]

Although California's wage and hour laws admittedly do not explicitly disapprove of rounding, they do not explicitly approve that practice either.  While the Legislature has not spoken directly on this subject, it seems clear that the existing statutory framework and longstanding public policy in this state cannot be read to condone a practice where any employee is deprived of payment for the time they have worked.  Even a "neutral" time-rounding policy will consistently work against those employees who routinely punch in a few minutes early and punch out a few minutes late so long as there are a sufficient number of employees who benefit from their time being rounded up.  In this case, Camp lost nearly an entire workday (7.83 hours) of pay due to rounding during the period between March 30, 2015 and October 20, 2020.  While it is possible that Camp might have gained back some, perhaps all, of that time in future pay periods, had he left his employment with Home Depot on October 21, 2020, those hours—and more importantly, the corresponding pay—would be forever lost to him.  While time-rounding may benefit or have no effect on Home Depot employees on average, it is clear that not all employees benefit and California law seeks to protect all employees.[4]

It is well-established that California wage and hour laws are generally more protective of employees than federal law.  (*Troester*, *supra*, 5 Cal.5th at p. 839.)  While

---

[3] For example, any employee that worked eight hours and seven minutes in a single day for an employer who rounded time to the nearest quarter-hour would not be paid the premium rate for that shift because their compensable time would only reflect eight hours of work.

[4] Home Depot argues that the gains and losses experienced over various pay periods by a particular employee will tend to "average out" over time through neutral rounding.  However, the stipulated Home Depot employee records in this case were analyzed by shifts and pay periods, not individual employees.  As a result, it is unknown how many individual employees, like Camp, had a net time deficit over the same period of time.

4

"California's wage laws are patterned on federal statutes and . . . authorities construing those federal statutes provide persuasive guidance to state courts[,] [citations] . . . federal authorities are of little assistance, if any, in construing state laws and regulations that provide greater protection to workers."  (*Armenta v. Osmose, Inc.* (2005) 135 Cal.App.4th 314, 322-323 (*Armenta*).)  "Similarly, where the language or intent of state and federal labor laws substantially differs, reliance on federal regulations or interpretations to construe state regulations is misplaced."  (*Id*. at p. 323.)

California's "public policy in favor of full and prompt payment of an employee's earned wages is fundamental and established."  (*Smith v. Superior Court*, *supra*, 39 Cal.4th at p. 82.)  "Because the laws authorizing the regulation of wages, hours, and working conditions are remedial in nature, courts construe these provisions liberally, with an eye to promoting the worker protections they were intended to provide." (*Prachasaisoradej v. Ralphs Grocery Co., Inc.* (2007) 42 Cal.4th 217, 227.)

" 'When construing the Labor Code and wage orders, we adopt the construction that best gives effect to the purpose of the Legislature and the IWC.  [Citations.]  Time and again, we have characterized that purpose as the protection of employees— particularly given the extent of legislative concern about working conditions, wages, and hours when the Legislature enacted key portions of the Labor Code.  [Citations.]  In furtherance of that purpose, we liberally construe the Labor Code and wage orders to favor the protection of employees.' "  (*Troester*, *supra*, 5 Cal.5th at p. 839.)  It is a "core statutory and regulatory purpose that employees be paid for all time worked."  (*Id*. at p. 847.)

In the absence of "convincing evidence of the IWC's intent to adopt" a federal standard "which expressly eliminates substantial protections to employees," California courts will "decline to import any [such] federal standard . . . by implication."  (*Morillion v. Royal Packing Co*. (2000) 22 Cal.4th 575, 592 (*Morillion*).)  The federal rounding regulation at issue here, as adopted by the California Division of Labor Standards

5

Enforcement (DLSE), has not been incorporated into the Labor Code or IWC Wage Orders.

Because *See's Candy* concluded (incorrectly in my view) there was no state law it could apply to the question of rounding, it understandably turned to federal law. Having done so, it then improperly relied on the DLSE's adoption of the corresponding Fair Labor Standards Act (FLSA) time rounding regulation. (*See's Candy*, *supra*, 210 Cal.App.4th at p. 903.) The 2002 revision to the DLSE Enforcement Manual states, in regard to rounding: "Rounding practices may be accepted for enforcement purposes by the Labor Commissioner, provided that such a practice is used in a manner that will not result, over a period of time, in a failure to compensate employees properly for all the time they have actually worked. The Labor Commissioner utilizes the practice of the U.S. Department of Labor of 'rounding' employee's hours to the nearest five minutes, one-tenth or quarter hour for purposes of calculating the number of hours worked pursuant to certain restrictions. (29 CFR § 785.48(b).) The federal regulations allow rounding of hours to five minute segments. Recording the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour has been the practice in some industires [*sic*] for many years. However, under such practices an employee must be fully compensated for all the time they actually work." (DLSE Manual, § 47.3.)

As *See's Candy* acknowledged, the DLSE's adoption of the federal time rounding regulation is an underground regulation, as it was not approved in compliance with the Administrative Procedures Act (APA) (Gov. Code, § 11340 et seq.). (*See's Candy*, *supra*, 210 Cal.App.4th at p. 902.) "Government Code section 11340.5 makes clear that the rulemaking procedures of the APA apply to any 'regulation,' and the definition of regulation includes 'every rule . . . adopted . . . to . . . *interpret* . . . the law . . .' (i.e., interpretive regulations)." (*Tidewater Marine Western*, *Inc*. *v*. *Bradshaw* (1996) 14 Cal.4th 557, 575.) A regulation that does not comply with the APA is void and is not

6

entitled to deference by the courts, though courts may still consider its persuasive value. (*Id*. at pp. 576-577.)

I am not persuaded that the federal time-rounding regulation adopted by the DLSE accords with California law regarding payment of wages. As shown above, there is a strong policy of requiring employers to pay all wages earned. A practice that condones the underpayment of any employees' wages merely because, on average, as many or more employees are either fully compensated or overpaid by that same practice is unlawful. As a result, I would reject the DLSE's adoption of the federal time-rounding practice to the extent that it allows for underpayment of wages to any employee. In the absence of statutory or APA-compliant regulatory authority, I conclude that California law does not permit such a practice if it results in the underpayment of wages to any employee when due.

*Armenta*, is instructive. The plaintiffs in that case were employed by a company that maintained utility poles, and the employer provided the employees with a truck in which to carry the various tools and equipment needed to perform their work. (*Armenta*, *supra*, 135 Cal.App.4th at p. 317.) Employees were also required to travel in that work truck from a central location to the various worksites. Employees were only paid for "productive" worktime, which was defined by the employer as time spent related to maintaining the utility poles. "Nonproductive" time included travel to and from a worksite, attending safety meetings, and loading or maintaining work vehicles. (*Ibid*.)

The employees sued, arguing that the employer's practice of averaging their hours worked violated California's minimum wage laws. (*Armenta*, *supra*, 135 Cal.App.4th at p. 319.) The employer argued that employees were paid hourly wages substantially higher than the applicable minimum wage pursuant to their collective bargaining agreement and the *average* hourly rate they were paid in any given pay period exceeded California's minimum wage requirement. (*Ibid*.)

7

The *Armenta* court agreed with the employees that the employer's practice of averaging their hours worked violated California law. In support of its conclusion, it adopted the trial court's reliance on an opinion letter issued by the DLSE as persuasive reasoning why the employees were entitled to compensation for *all* hours worked. (*Armenta*, *supra*, 135 Cal.App.4th at pp. 319-320.) The DLSE opinion letter acknowledged that California's minimum wage law is " ' "susceptible" ' " to two " ' "divergent" ' " interpretations: " ' "1) that the obligation to pay minimum wages attaches to each and every separate hour worked during the payroll period, and that payment must be made for all such hours on the established payday, or 2) that the obligation to pay minimum wages for the total number of hours worked in the pay period is determined 'backwards' from the date that any payment is due, without considering any hour (or part of any hour) in isolation." ' " (*Id*. at p. 320.) The DLSE concluded the first interpretation comported more closely with California law and required payment of the minimum wage for " ' "each and every separate hour worked." ' " (*Ibid*.) Although the DLSE recognized that federal courts had consistently applied the second interpretation, the " 'dramatic[]' " differences between federal and California labor laws mandated a different interpretation in California. (*Ibid*.)

The *Armenta* court also construed the language of the applicable wage order, noting that it "differ[ed] significantly" from the Fair Labor Standards Act of 1938 (29 U.S.C. § 201 et seq.). (*Armenta*, *supra*, 135 Cal.App.4th at p. 323.) The federal statute "requires payment of minimum wage to employees who 'in any work week' are engaged in commerce," whereas subdivision 4(B) of Wage Order No. 4 requires payment of the minimum wage for "all hours worked." (*Armenta*, *supra*, at p. 323.) By referencing payment " 'in any work week,' " the federal statute permits averaging an employee's total pay over that period. (*Ibid*.) The California wage order's reference to "hours worked" indicates an "intent to ensure that employees be compensated at the minimum wage for *each hour worked*." (*Ibid*., italics added.)

8

Finally, the court noted that "the policies underlying California's minimum wage law and regulations" "reflect a strong public policy in favor of full payment of wages for all hours worked." (*Armenta*, *supra*, 135 Cal.App.4th at p. 324.) Given that public policy, a method of "averaging all hours worked 'in any work week' to compute an employer's minimum wage obligation under California law is inappropriate." (*Ibid*.)

Home Depot argues that we should avoid departing from the conclusions reached in *See's Candy* and its progeny unless there is a " "good reason to disagree.' " (*Fire Ins. Exchange v. Abbott* (1988) 204 Cal.App.3d 1012, 1023.) However, with due respect to our judicial colleagues, I am simply not persuaded by the various California and federal authorities upon which Home Depot relies (see, e.g., *Corbin v. Time Warner Entm't-Advance/Newhouse P'ship* (9th Cir. 2016) 821 F.3d 1069; *David v. Queen of Valley Medical Center* (2020) 51 Cal.App.5th 653; *AHMC Healthcare, Inc. v. Superior Court* (2018) 24 Cal.App.5th 1014; *Ferra v. Loews Hollywood Hotel, LLC* (2019) 40 Cal.App.5th 1239) as each of those cases expressly adopted *See's Candy*'s approach of upholding a rounding practice so long as it is neutral on its face and as applied. Because those decisions similarly fail to give the appropriate weight to California's public policy in favor of full payment of wages earned, as discussed herein, there is good reason to disagree.

### *C*. **Troester** *and* **Donohue**

As the majority opinion correctly notes, the California Supreme Court's decisions in *Troester* and *Donohue*, while not expressly disapproving of *See's Candy*, strongly suggest that where an employer has precisely captured time worked, as in this case, a rounding policy which leads to underpayment of wages to that particular employee when due is unlawful.

*Troester* is instructive in that it reaffirms that an employer is obligated to pay all wages earned by an employee and that any underpayment of those wages, even if only by a small amount as would result from rounding an employee's time down to the nearest 15

9

minutes, is unlawful. (*Troester*, *supra*, 5 Cal.5th at p. 847.) In *Donohue*, the court struck a cautionary note with respect to the practice of time rounding of daily shifts, when it observed that "technological advances may help employers to track time more precisely [and] . . . [a]s technology continues to evolve, the practical advantages of rounding policies may diminish further." (*Donohue*, *supra*, 11 Cal.5th at pp. 73-74.)

The language of *Troester* and *Donohue* emphasizing California's policy of protecting workers, ensuring that they are timely paid all wages—even de minimis wages—earned, and rejecting rounding in the context of meal periods, signal that time-rounding practices that result in the underpayment of any employee violate California law.

I am not persuaded that the California Supreme Court's failure to expressly disapprove *See*'*s Candy* is tantamount to an endorsement of that decision. In neither case was the practice of time rounding on a per-shift basis at issue and, without a decision squarely contradicting *See*'*s Candy*, there was no split of authority for the Supreme Court to resolve.

I also do not think the Legislature's failure to act in response to *See's Candy* can be read as acquiescence, let alone approval, of its holding. The California Supreme Court recently addressed a similar argument. (*Naranjo v*. *Spectrum Security Services*, *Inc*. (2022) 13 Cal. 5th 93, 116-117.) In *Naranjo*, the court stated "Legislative acquiescence arguments of this type rarely do much to persuade; even when a clear consensus has emerged in the appellate case law, we have noted that legislative inaction supplies only a ' " ' " 'weak reed upon which to lean' ". . .' " ' in inferring legislative intent." (*Id*. at p. 116.)

### D. *Conclusion*

I conclude that California's long-standing interest in protecting employees and ensuring that they are paid for all time worked cannot be overcome by reading inaction by the California Supreme Court and the Legislature as implied approval of *See's Candy*

and the DLSE's adoption of time rounding at least where, as here, that rounding practice leads to a loss of wages payable to an employee. As I have shown above, because *every* employee is entitled to payment of *all* wages earned, we must reject any practice which permits *any* employee to be underpaid. California law is stricter than federal law in this realm, and I am not convinced by the justification that rejecting time rounding in this context " 'would preclude [California] employers from adopting and maintaining rounding practices that are available to employers throughout the rest of the United States.' " (*See's Candy*, *supra*, 210 Cal.App.4th at p. 903.) California does not import less protective federal wage and hour standards except in those instances where the Legislature or the IWC declared an express intention to do so. (*Morillion*, *supra*, 22 Cal.4th at p. 592.)

"Modern technology allows society not only to measure time, but—ever more—to master the knowledge of precisely how it is used, by whom, and for what purpose." (*Troester*, *supra*, 5 Cal.5th at p. 849 (conc. opn. of Cuéllar, J.).) In light of the undisputed facts in this case regarding the use of Kronos, Home Depot's rounding policy cannot be justified under California law when the necessary payroll calculations are carried out by an electronic timekeeping system and with the explicit understanding that some employees will be left with the hope—not guarantee—that they will receive all of their wages at some point in the future. While I recognize that some employers rely on rounding and am sensitive to the potential impact on their operations, in the absence of any statutory or regulatory authority expressly authorizing the practice, I cannot find that it comports with California law at least in those circumstances when it results in the underpayment of an employee's wages.

Where an electronic timekeeping system, such as Kronos, is able to precisely capture time worked, the employer must pay the employee for that worktime when due. In this case, it is undisputed that time rounding, when compared to the actual time captured, resulted in the loss to Camp of approximately 7.83 hours during the subject

11

period.  Although some may consider this loss of hours an inconvenient consequence of a traditional business practice which will "average out" over time, I consider it inconsistent with California law.  "It has long been recognized that wages are not ordinary debts . . . because of the economic position of the average worker and, in particular, [their] dependence on wages for the necessities of life for [themselves] and [their] family, it is essential to the public welfare that [they] receive [their] pay when it is due."  (*In re Trombley* (1948) 31 Cal.2d 801, 809.)  I believe the disposition reached by the majority opinion is consistent with this important California policy.

_____
Wilson, J.

Camp et al. v. Home Depot, USA, Inc.
H049033

Trial Court:                          Santa Clara County Superior Court
                                      Superior Court No.:  19CV344872


Trial Judge:                          Hon. Patricia M. Lucas


Counsel for Plaintiffs/Appellants:    Moon & Yang, APC
Delmer Camp and Andriana Correa       Howard Scott Leviant
                                      Kane Moon
                                      Lilit G. Tunyan


Counsel for Defendant/Respondent:     Akin Gump Strauss Hauer & Feld LLP
Home Depot U.S.A., Inc.               Donna Marie Mezias
                                      Dorothy Frances Kaslow
                                      Aileen Marie McGrath


*Camp et al. v. Home Depot, U.S.A., Inc.*
**H049033**